A. YANCEY V. JOHN NORRIS AND OTHERS.

See the pleadings and facts in this case, in which it was held that the facts did not authorize the presumption of a grant, and that the facts proven and the allegations of the petition, taken together, repelled the presumption of a grant prior to the enactment of the State colonization law of 1825.

A grant issued by the primero vocal or political chief of the department of Texas in 1824, passed no title to the grantee. Jones v. Garza, 11th Texas R., 186, cited as decisive of the point.

A grant, made in 1825 or 1826, of land situated within the border leagues, would be ineffectual to pass title, unless the consent of the federal executive of Mexico were also shown.

The consent of the federal executive will not be presumed in behalf of a grant resting upon a presumption; nor will the consent of the executive in such a case be presumed unless his consent has been alleged.

There must be proper allegations upon which to found presumptions as well as proof.

The case of Taylor v. Watkins, 26 T. R., 688, referred to, in which the principles upon which presumptions of grants rest, are discussed.

APPEAL from Nacogdoches. Tried below before the Hon. A. W. O. Hicks.

This suit was brought by appellees against appellant to recover damages and to try title to four leagues of land, which they claimed as heirs at law of Ramondo Norris, or Edmund Norris. The petitioners allege that their ancestor, Edmund Norris, departed this life about the 29th day of December, A. D. 1828, in the then State of Coahuila and Texas; that his widow, Sarah H. Norris, died in the month of April, 1850; that at that time, and

long before the death of their ancestor, Edmund Norris, he was the owner of four leagues of land, situated in the said county of Nacogdoches, on the west side of the Attoyac river, known by the name of "Nacomichi," which tract of land is described as set forth and represented by the annexed document from the General Land Office, made a part of the petition, as exhibit "A." They further averred that their ancestor, Edmund Norris, had been in the actual, continuous and peaceable possession of said land for more than twenty years previous to his death, claiming, using and cultivating the same, under said marked lines and known boundaries; and that his heirs, and those claiming under them, have continued ever since the death of their ancestor, to occupy and cultivate the said land, claiming the same under their ancestor, and to the full extent of said boundaries and lines. They further averred that owing to the many political disturbances to which Texas and Mexico have been subjected for the last fifty years, and owing to the great length of time which has elapsed since the tract of land was granted to their ancestor, which they aver was made to him more than twenty years before his death by the proper political authorities of the then existing government of the country, the said grant has been partly lost or destroyed, so that they cannot procure the original or a perfect copy thereof, and now hereto annex a certified Land Office copy of so much of said grant as is to be found marked "Exhibit A," herewith filed. They further averred that petitioners, being in such peaceable possession, claiming as aforesaid, the defendant, on the first day of October, 1854, with force and arms, entered upon and expelled petitioners. They pray for damages and possession.

Defendant filed general demurrer, and specially excepted. 1st. The document made an exhibit in said petition, as constituting the plaintiffs' evidence of title, shows that the plaintiffs' title has no judicial standing in court so as to enable them to maintain their suit of trespass to try title. 2d. Because the officer, who pretended to make the concession of title to plaintiffs' ancestor had no authority in law to grant or make title to land, at the time the title purports to have been made, by the laws of Spain and Mexico. The defendant further pleaded not guilty.

Exceptions of defendant sustained so far as plaintiffs relied upon "Exhibit A." as a title, or upon the authority or power of San-cedo to grant title, and overruled as to the other allegations in the petition.

The plaintiffs, by amendment, averred that they regarded and treated the document marked "Exhibit A," referred to in their original petition, as describing the boundaries of the land claimed by plaintiffs. They made it a part of their original petition as showing that plaintiffs' ancestor, Edmund Norris, applied to the political chief of the department of Texas for said tract of land, and that he was then put into possession of said land by an officer professing to be a legally entitled officer and agent of the government, which professed to have legal authority to do so; under which possession, so given, and by vested, subsequent, legal and bona fide title, and confirmation and possession, made by the legally constituted authority, under the colonization law of the year 1825, of the government of Coahuila and Texas, that their ancestor, Edmund Norris, then or during the year following, obtained from the said legally constituted agent a good, bona fide, legal and complete title, and confirmation of the acts of said political chief in fee simple to said land. They further averred that their ancestor, in the year 1825 or 1826, was in the peaceable enjoyment and possession of said land, under the bona fide and legal title made to him that year as aforesaid, and continued in the peaceable possession of the same until his death, in 1828; that the said land descended to his children and legal heirs, without let or hindrance, who held peaceable possession of same until wrongfully ejected by defendants. They averred that their ancestor and those claiming under him, including plaintiffs, have held peaceable possession of said land, under a legal bona fide title, for more than twenty-five years; that defendant well knew the metes and bounds of said land, and that the same then was, and had been ever since the death of Edmund Norris, claimed by his heirs and legal representatives; that owing to the lapse of time, the death of said Edmund Norris, and the various revolutions through which Texas has passed since said bona fide title was completed to said Edmund Norris, the title papers have been

lost or destroyed, so that they cannot be found. Original petition filed the 7th day of March, 1855.

The plaintiffs read in evidence an agreement, in which defendants admitted heirship of plaintiffs as alleged, also, "Exhibit A," referred to in the pleadings, which was a translated copy of the alleged title of Edmund or Ramondo Norris. The certificate of the Commissioner of the General Land Office to this copy is dated the 13th day of February, 1855. The exhibit contained an application of Ramondo Norris to the "Governor," dated at the town of Nacogdoches the 13th day of April, 1810, in which he recites that he had purchased from one Maculinis, extrajudicially, the rancho upon which he then resided; that Maculinis had purchased same from Matias Pena. Norris prayed that his title and possession be confirmed by decree and formal instrument, designating to him one league by each course from his dwelling-house. The exhibit contained, also, an order, dated 5th day of April, 1824, of Jose Antonio Sancedo, styling himself "primero vocal of the most excellent delegation, and political chief *ad interim* of the Province of Texas," directing the title to be extended to applicant as prayed for, and, also, the title of possession according to his decree, extended to Ramondo Norris.

The plaintiffs also proved by witnesses, substantially, that Edmund Norris, called also Ramondo Norris, was in possession of the land in controversy in 1805 or 1806; that he was heard to claim it by metes and bounds in 1813; that he claimed to have purchased it from one McWilliams; that he had a dwelling-house upon it; made other improvements; that he continued in possession of it until 1813, at which time he, in common with the other inhabitants of the country, finding it unsafe to remain, in consequence of the revolution going on and the disturbed condition of the country, went to Louisiana. In 1821 Ramondo Norris and the inhabitants generally came back to Nacogdoches county, he returning to his old home, and there remained in peaceable possession until his death, in 1828. After his death, his sons, except John Norris, moved away. John moved to Nacogdoches county, and there remained until the institution of suit. John Norris, at all times since the death of his father,

had claimed the four leagues as the property of himself and the other heirs; had exercised ownership over the land; had from time to time sold portions of it, and put the purchasers in possession; had been in possession, either by himself or by tenants, most of the time since his father's death. The settlers in the neighborhood of the land in controversy had, for many years, regarded the property as belonging to the heirs of Ramondo Norris, which was generally known as the "Norris claim," or "Norris grant." In making locations the neighbors had respected the claim and avoided locating upon it, until the location made by defendant. The location made by defendant consisted of one-third of a league, and about one-half of his location lapped over upon one of the four leagues claimed by plaintiffs. They also proved that defendant, before he made his location, knew that the land in question was claimed by plaintiffs, and was informed of the metes and bounds. The plaintiffs offered no evidence as to a grant under the colonization law of 1825.

The defendant read in evidence a patent from the State of Texas, dated 20th day of November, 1844, for one-third league of land, and also proved that about one-half of this third league lapped over on one of the leagues claimed by plaintiffs. That the four leagues claimed by plaintiffs were situated within the border leagues, and east of the line of Burnet's Colony. That Jose Antonio Sancedo resided in San Antonio in 1824; that he held the office of primero vocal, or political chief of the deputation of the provincial government of Texas, from the year 1823 up to the 28th day of August, 1824, at which time his authority ceased by a decree of the legislature of the 28th day of August, 1824. The power and authority to hold such office was given to him by the people. At that time the government was disorganized, and there was no constitution in existence. The power of a primero vocal, or political chief, was purely executive, and in no case extended to granting titles to lands, or to confirming incomplete titles. The titles issued by Sancedo as political chief, or primero vocal, were considered as null and void, except such as were confirmed by the Governor in conformity with article 47 of the Colonization Law, of the 24th of March, 1825.

Jury waived; judgment for plaintiffs; motion for new trial overruled; defendant appealed.

*George F. Moore*, for appellant.—The court erred in giving judgment for the appellees. This depends upon the question whether the facts are such as warrant the presumption of a grant. The whole doctrine of presumptions is fully and philosophically discussed by Mr. Starkie, vol. 3, p. 903, 937. Presumptions are divided by him into three general classes : 1st. Legal presumptions made by the law itself. These, however, are not generally used as rules of evidence for the purpose of ascertaining doubted facts, but are in effect arbitrary rules of law. 2d. Legal presumptions to be made by the jury, or presumptions of law and fact. These are also artificial presumptions recognized and warranted by law as the proper inferences to be made by juries under particular circumstances. 3d. Natural presumptions, or presumptions of fact. These depend upon their own natural force in generating belief, as derived from those connections which are pointed out by experience. The second class partakes to some extent of the characteristics of the first and third class, as to some extent they depend upon the rules governing a jury in drawing their conclusions from the facts, and in others they follow the analogy of the statute of limitations or presumptions of law in cases to which the principles of the statute are applicable, although not within the words of the statute ; such for instance as cases in equity, or prescriptive rights, which, from the analogy to the statute barring the right of entry in land, would after the lapse of the same period be sufficient to establish an incorporeal right affecting the land. It will readily be perceived from these different classes of presumptions and the different analogies which apply to the numerous different and distinct, and sometimes opposite and contradictory state of facts under which the numerous cases under each class range themselves, that we may be easily misled in consulting decisions, unless we look to the principle upon which each particular case is adjudicated. When we do this, we will find that, while incorporeal hereditaments, and frequently deeds, powers of attorney, releases, and almost any other

character of instrument, will be presumed if the facts warrant
the application of the analogy of the statute of limitations,
and frequently after a much shorter time if the evidence is suffi-
cient to raise the presumption of fact in the mind of the jury,
and in some rare cases even a statute or grant from the govern-
ment may be presumed; yet in no case will such a presumption
be made upon the analogy of the statute of limitations, for that
would be for the courts by presumption to create a bar to the
government, which it had not done by the statute. And I un-
hesitatingly venture the assertion, that no well considered case can
be found in which it has been held that a grant of land would be
presumed against the government on possession alone, unless con-
tinued for a much longer period than the longest period prescribed
by the statute of limitation. Certainly there is no such case to
be found among the decisions of our court. This subject has
been referred to in the cases of Jones v. Borden, 5 Tex., 410.,
in which it was only recognized as a doctrine applicable to a proper
case; in Lewis v. San Antonio, 7 Tex., 288, in which there was
ample testimony of the existence, contents and loss of an ancient
and valid title, with proof of possession under it for one hundred
years or more; Herndon v. Casiano, 7 Tex., 322, where appears to
be also proof of an ancient lost grant and possession for more than
half a century previous to 1813, when the possession was broken
up by hostile Indians; Paul v. Perez, 7 Tex., 338, where was
proof of possession from about 1800 to 1836, and also some testi-
mony tending to prove a continued subsequent possession until
1847 by an agent, after which there was no question about it, and
this possession was held under an inchoate title from the proper
officers which entitled the party to the possession of the land, and
merely lacked the issuance of the formal final title. In Dangerfield
v. Paschal, 11 Tex., 579, although the presumption was not sus-
tained because of a defect as to proof of boundaries, yet there
was the same character of inchoate title and still longer
possession. Morris v. Byers, 14 Tex., 278, where a party had
been in possession, as the court say, for more than twenty years,
most of the time under a location of a valid headright certificate,
having, as the court decided, the better title without reference to

Yancey v. Norris.

this doctrine; yet the judge who delivers the opinion suggests that possession for fifteen years might raise the presumption, but this of course we must understand with reference to the character of the possession and facts of the case, upon consideration of which it will be found that this, if considered as an authority, would not militate against the position that I have laid down. The only other adjudication by this court on the subject, that I am aware of, is Vardeman v. Edwards, in 21 Tex., 737, in which possession was claimed for over fourteen years, and there was a valid inchoate title lacking only the formal final title; (the possession had, however, been interrupted by hostile Indians, though it was alleged that possession was renewed as soon as it could be done with safety,) but was not held sufficient to authorize the presumption. The notes to Phill. Ev. also contain an elaborate review of the cases on presumptions and classification of the different grounds upon which they have gone, which I think fully sustains the doctrine for which I am contending. (1 Phill. Ev., last ed., in 3 vols., 660—and particularly on 661, what is said in reference to the case of Sumner v. Child, 2 Conn., 631, *et seq.*, and also the principle upon which the presumption is made.) In Wilson v. Steiner, 9 Sergt. & R., 39, it was held that a possession for 39 years under a survey, (made fifty years before,) found in the hand writing of an assistant deputy surveyor, indorsed "copied for return," with a memorandum by him that there was an authority to make it, and when the lines of the survey are marked on the ground, did not authorize the presumption. And the principle upon which this presumption is made is given, and it is said that the presumption would not as readily be made in a country where the public domain is held before a title has been issued, as where this is not the case. (See also Paine et al. v. Ward et al., 4 Pick., 246; Starke v. Smith, 5 Ohio (Hammond) Rep., 455.

(No brief on file for appellee.—REP.)

BELL, J.—We are of opinion that there is error in the judgment. The plaintiffs below did not show facts that would authorize the presumption of a grant to their ancestor. The facts proven

and the allegations of the petition taken together, repel the presumption of a grant prior to the enactment of the State colonization law of 1825. In their amended petition, the plaintiffs below abandoned the pretence that the document (marked A,) filed as a part of their original petition, was any evidence of a grant to their ancestor; and they alleged that they relied on the said document as showing that their ancestor applied to the political chief of the department of Texas for the land, as therein expressed, and that their ancestor had been put in possession of the land at the time stated in said document, by an officer professing to be a legally constituted officer and agent of the government, who professed to have legal authority to do so. The plaintiffs then allege that their ancestor received a grant from the legally constituted authority, under the colonization law of 1825.

The plaintiffs were doubtless led to this mode of pleading by the consideration that this court has decided that Jose Antonio Sancedo, who undertook to grant the land here in controversy, to Ramundo Norris, on the 5th of April, A. D. 1824, had no authority to make such a grant. (Jones v. Garza, 11 Tex., 186.)

The fact that the application made by Ramundo Norris, on the 13th of April, 1810, was found amongst the public archives, without any evidence that any action had ever been taken upon it by the public authorities, might be supposed to repel the presumption that any grant had been made upon that application.

It could not with safety be alleged that the political chief had made the grant in 1824, because that would be to ask the court to presume that a grant had been made, when there was no competent authority to make such a grant. It was therefore necessary to lay the foundation for the presumption of a grant, by alleging that the grant was made under the colonization law of 1825. But this allegation presents two difficulties, both of which seem to us to be insuperable. The first is, that the allegation itself negatives and repels the presumption of a grant prior to the year 1825; and the second is, that inasmuch as the land is shown to be situated within the border leagues, the grant made in 1825 or 1826 would be ineffectual to pass the title unless the consent of the federal executive of Mexico were also shown. The court would hardly

Yancey v. Norris.

presume the consent of the federal executive, because to · do so would be to do, in behalf of a grant resting upon presumption, what the court has always refused to do in support of a grant actually produced in evidence. Another objection to the presumption of the consent of the federal executive is, that no such consent is alleged, and there must be proper allegations upon which to found presumptions as well as proof.

The principles upon which presumptions of grants rest, have been discussed during the present session of this court, in the case of Taylor v. Watkins, and it is unnecessary to enter upon the discussion of the subject again. Upon the principles laid down in that case, the plaintiffs in the court below are not entitled to recover.

The case was submitted to the judge below, without a jury, upon an agreement as to the facts; and we do not, therefore, deem it necessary to remand the case. The judgment of the court below is reversed; and this court proceeding to render such judgment as ought to have been rendered in the court below, it is ordered, adjudged and decreed that the appellees, plaintiffs in the court below, take nothing by this suit, that the parties go hence without day, and that the appellant, Yancey, recover of the appellees the costs of this court, and also the costs of the District Court.

Judgment reformed and rendered.

Moore, J., did not sit in this case.