### W. S. ARTHUR ET AL. v. THOMAS S. RIDGE.

Decided June 19, 1905.

**1.—Deed—Description of Land.**

Where a deed by the heirs of the original locator of a league of land described it as his "location or right of location on Bear Creek," this was a sufficient description where the evidence showed that the league was on Bear Creek and was the locator's only location in that country, the ambiguity in such description not being a patent one.

**2.—Same—Reservation of Part not Bounded.**

The deed was not ineffectual because it reserved 640 acres out of the league or location, describing the part reserved as "640 acres to be taken at the old place on Bear Creek," where it was shown that "a certain" 640 acres was definitely known as "the old place," being the place where the locator's widow lived at the time of her death.

**3.—Same—Subsequent Designation by Agreement.**

If the designation of the 640-acre reservation was not sufficiently certain, the deed left in the grantors the right to select 640 acres at the point designated, and the evidence showing that this was subsequently done with the acquiescence of those concerned, the deed conveyed the other portion of the league.

**4.—Same—Deed as Evidence—Part of Grantors not Bound.**

The fact that the deed was not binding on a part of the grantors therein, certain minors and a married woman, did not prevent it from being admissible in evidence.

**5.—Trespass to Try Title—Pleading and Proof.**

In trespass to try title where the plaintiff has not pleaded his title specially, he is entitled to prove any character of title except title by limitation. Rev. Stats., art. 5250.

**6.—Deed—Presumption of Existence—Actual Possession of the Land.**

In countries where the lands are largely unsettled and actual possession the exception and not the rule, the doctrine that possession is indispensable to the presumption of a grant does not apply. Evidence that the widow of L. recognized the open claim of E. to certain land patented to L., and that the heirs of L. never paid any taxes on the land, and afterwards in 1848, quitclaimed it to the heirs of E., held to warrant a finding that there was a conveyance from L. to E., though no actual possession of the land, which was wild, was shown in E. or those claiming under him.

Appeal from the District Court of Sabine. Tried below before Hon. Tom C. Davis.

*Goodrich & Symott* and *W. P. McBride,* for appellants.—1. Where the land intended to be conveyed by a deed is so inaccurately described

that it appears, on an inspection of the deed, the identity of the land is altogether uncertain and can not be determined, the court should pronounce the deed void, parol evidence not being admissible to show what land was intended to be conveyed. Kingston v. Pickens, 46 Texas, 101; Norris v. Hunt, 51 Texas, 616; Cook v. Oliver, 83 Texas, 562; Coker v. Roberts, 71 Texas, 601.

2. In order to have authorized the court to presume that there was a valid sale or transfer from Benjamin Lindsey in his lifetime to Matthew Earle in his lifetime of all of said league of land in Sabine County, Texas, except 640 acres, appellees should have shown that such claim, title and ownership have been accompanied by long possession and enjoyment of the land, and by the exercise of the usual acts and prerogatives indicative of such claim and ownership on his part. Schauber v. Jackson, 2 Wendell, 13; Stark, Ev., 193, 194, and notes.

*Stewart & Templeton,* for appellee.—1. The ambiguity or defect in the description of the land set out in the instrument mentioned in appellant's first and second assignments of error is not a patent defect as insisted on by appellants, but is a latent ambiguity and being such, extraneous evidence was admissible to aid the description given in the instrument and to identify the land conveyed. Mass v. Bromberg, 66 S. W. Rep., 470; Frost v. Cattle Co., 81 Texas, 505; Henry v. Whittaker, 82 Texas, 8; Overand v. Menczer, 83 Texas, 122; Gresham v. Chambers, 80 Texas, 544; Witt v. Harlan, 66 Texas, 660; Cook v. Oliver, 83 Texas, 559; Wilson v. Smith, 50 Texas, 365; McQuirter v. Allen, 1 Texas Civ. App., 649.

2. It was sufficient for plaintiff to allege title to and ownership of the property generally, and under such allegations he could introduce any legitimate evidence to make out his title, since the statute regulating the action of trespass to try title so allows. Sayles' Rev. Stats., art. 5250; Parks v. Caudle, 58 Texas, 216; Bridges v. Cundiff, 45 Texas, 440.

3. The evidence, facts and circumstances in this case, were so full, complete and overwhelming in support of the presumption of a grant from Benjamin Lindsey in his lifetime to Matthew Earle that no rational conclusion could be reached other than that found by the trial court. Herndon v. Burnett, 50 S. W. Rep., 581; Baldwin v. Goldfrank, 31 S. W. Rep., 1066; Walker v. Caradine, 78 Texas, 492; Glasscock v. Hughes, 55 Texas, 476; Railway Co. v. Uribe, 85 Texas, 390; Taylor v. Watkins, 26 Texas, 314, 698; Fletcher v. Fuller, 120 U. S. Book 30, p. 579.

*A. D. Hamilton, John Hamman* and *Moye Wicks,* for J. H. Herndon, executor, made defendant as appellee's warrantor.—1. Oral evidence and other extraneous proof was admissible to remove the ambiguity of the description contained in the instrument executed by the heirs of Benjamin Lindsey and wife to the heirs of Matthew Earle, November 27, 1848, such ambiguity being latent and not patent—the instrument was therefore properly admitted in evidence as a basis for such explanatory testimony, and to be construed in connection therewith. Robinson v. Jones, 22 S. W. Rep., 15; Mass v. Bromberg, 66 S. W. Rep., 470; Camley v. Stanfield, 10 Texas, 550; Earley v. Sterritt, 18 Texas,

116; Wofford v. McKenna, 23 Texas, 44; Hughes v. Sandal, 25 Texas, 164; Kingston v. Pickens, 46 Texas, 101; Ragsdale v. Robinson, 48 Texas, 396; Wilson v. Smith, 50 Texas, 369; Rainbolt v. March, 52 Texas, 251; Douthit v. Robinson, 55 Texas, 73; Lunn v. Scarborough, 24 S. W. Rep., 846; Clark v. Gregory, 27 S. W. Rep., 56; Herman v. Likens, 39 S. W. Rep., 282.

2. The court did not err in finding that there was a valid sale of the premises in question to Matthew Earle by Benjamin Lindsey during the lifetime of each of them. Fletcher v. Fuller, 120 U. S., 534, 30 Law Ed., 759; United States v. Deverank, 90 Fed. Rep., 187; Dailey v. Starr, 26 Texas, 562; Garner v. Lascar, 71 Texas, 435, 9 S. W. Rep.,· 334; Johnson v. Shaw, 41 Texas, 432; McDow v. Rabb, 56 Texas, 158; Johnson v. Timmons, 50 Texas, 531; Hooper v. Hall, 35 Texas, 87; Ballard v. Perry, 28 Texas, 366; Herndon v. Burnett, 50 S. W. Rep., 583; Texas Tram & Lumber Co. v. Gwin, 52 S. W. Rep., 110; Jones v. Reus, 5 Texas Civ. App., 628, 24 S. W. Rep., 674; Bounds v. Little, 75 Texas, 320, 12 S. W. Rep., 1109; Amman v. Dwyer, 78 Texas, 639; Manchaca v. Field, 62 Texas, 141; Baylor v. Tillebach, 49 S. W. Rep., 720; Crain v. Huntington, 81 Texas, 61; Johnson v. Lyford, 9 Texas Civ. App., 85-89, 29 S. W. Rep., 57; Smith v. Swan, 2 Texas Civ. App., 563; Grayson v. Lafland, 52 S. W. Rep., 121; Johnson v. Newman, 43 Texas, 636; Harris v. Nations, 79 Texas, 411; Baldwin v. Roberts, 36 S. W. Rep., 789; Wells v. Burts, 3 Texas Civ. App., 435; Herndon v. Vick, 89 Texas, 469; McDow v. Robb, 56 Texas, 158; Dunn v. Eaton (Tenn.), 23 S. W. Rep., 163; Parker v. Spencer, 61 Texas, 160; Daniels v. Creekmore, 7 Texas Civ. App., 577, 27 S. W. Rep., 148.

GILL, Associate Justice.—This action of trespass to try title was brought by T. S. Ridge, claiming under Matthew Earle, to recover the Benjamin Lindsey league of land in Sabine County, less 640 acres out of the northwest corner and less certain other small tracts not necessary to be further mentioned in this opinion.

The defendant, W. S. Arthur, and his many codefendants claimed under the heirs of Benjamin Lindsey, the original grantee. Subsequently the case of Caradine v. Mann, involving the same land and upon kindred issues, was consolidated with this cause and the two were tried together. We shall not undertake to set out the names of the numerous defendants and intervenors, nor to state the nature of their various claims against the plaintiff and against each other. Such a statement is not necessary for the purposes of this opinion.

In a trial to the court without a jury Ridge recovered judgment as prayed for and the parties affected thereby have appealed. The only question presented on this appeal is whether the plaintiff Ridge has title to the Lindsey league, less the tracts excepted by his petition, and our statement of the case shall contain such facts only as are germane to that issue and the questions growing out of it.

The league of land in controversy was titled to Benjamin Lindsey by the Mexican government in 1835, and Benjamin Lindsey moved upon it and established a home in the northeast corner thereof. The appellee claims the land through the heirs of Matthew Earle, and the controlling question is whether the facts support the conclusion that Benjamin

Lindsey sold and conveyed to Matthew Earle the league of land, less a reservation of 640 acres.

We will state in their chronological order the facts bearing upon that issue. Benjamin Lindsey and Matthew Earle were brothers-in-law and lived up to the time of Lindsey's death in the same section of Texas. Lindsey died in 1838, but prior to his death he had moved away from the league, but the place where he had lived thereon was known as the old Lindsey place. The evidence discloses no written conveyance from Lindsey to Earle, but prior to the death of Lindsey, Earle openly claimed the entire Lindsey survey, except 640 acres comprising the Lindsey home. This claim was thereafter continuously and openly asserted by him with the knowledge of his sister, the widow of Lindsey, and who was the sole devisee of her husband. During her lifetime she recognized the claim of the Earles, and after her husband's death moved back to the old home, claimed only the 640 acres, and declared the Earle heirs owned the remainder. After her death her children claimed only the 640 acres and recognized the claim of the Earle heirs to the remainder. There is testimony to the effect that Earle in his lifetime and his heirs after his death went upon the land and exercised acts of ownership and control over it. The entire league, except the 640 acre Lindsey home, was wild land, and has never been actually occupied by any one.

The old Lindsey home, consisting of 640 acres taken in the form of a square out of the northwest corner of the league, is now owned by a man named Heins. The Lindsey heirs do not claim it, but concede that it has been conveyed. David A. Earle, a nephew of Benjamin Lindsey, and Mrs. Sarah Williams, both of whom were well acquainted with Earle and Lindsey and their heirs, testify to the open and continuous assertion of ownership of the league, less 640 acres, by Earle and his heirs, and to the equally continuous concession on the part of Mrs. Lindsey and her heirs that the title was in the Earles. They stated that its ownership by the Earles was a matter of common notoriety in that neighborhood. From that early day until shortly before the institution of this suit the Lindsey heirs have asserted claim to none of it, save the 640 acres which was sold, and have paid no taxes thereon.

Mary A. Lindsey, the widow of Benjamin Lindsey, died in 1847, leaving several children surviving her. The inventory of her estate comprises a list of landed interests, but the Lindsey league is not mentioned, unless the words "a bond on Wm. Earle for 640 acres of land in Sabine County" be taken to refer to the 640 acres reserved.

Wm. Earle, one of the Earle heirs, was one of the commissioners of partition for the division of her estate among the heirs, and in the partition there was no mention of the Lindsey league, nor was it mentioned in any of the papers of the estate. In the matter of the guardianship of the Lindsey minor heirs it was shown that none of the Lindsey league was ever listed as a part of their estate.

On the 27th day of November, 1848, about ten years after the death of Benjamin Lindsey, and one year after the death of Mrs. Mary A. Lindsey, his widow, the adult Lindsey heirs and the guardians of the minors executed and delivered to the heirs of Matthew Earle the following instrument of writing:

"State of Texas, San Augustine County.

"Know all men by these presents, that we, Holland L. Anderson, Benjamin Lindsey, David Lindsey, R. E. Lindsey, James W. Lindsey, Belsora Evans, Benjamin Lindsey, guardian of Mary Jane Lindsey, a minor heir of Thomas Lindsey, deceased, M. R. Fitzgerald, guardian of Thomas H. Lindsey, Amanda Lindsey and Owen H. Lindsey, minor heirs of Owen H. Lindsey, deceased, and Holland L. Anderson, guardian of Ursula Lindsey and Margaret Lindsey, being the heirs at law and legal representatives of Benjamin Lindsey and Mary A. Lindsey, deceased, for and in consideration of the sum of one hundred dollars, do hereby relinquish and quit-claim to Nancy Earle, William Earle, Belinda Williams, Delphia McGuffin and Elizabeth Landrum, being the heirs of Matthew Earle, deceased, all the right and claim that Benjamin Lindsey had in and to all and singular the location or right of location on Bear Creek, except six hundred and forty acres, hereby reserved to be taken at the old place on Bear Creek. To have and to hold said location and right of location to them, their heirs and assigns forever. In testimony whereof we hereunto set our hands and seals this 27th November, A. D. 1848."

Holland L. Anderson was husband of one of the Lindsey children, was intimately connected with the management of the Mary Lindsey estate, and acted as guardian for some of the minor heirs. There were four Earle heirs. Ridge connected his title by mesne conveyances with that of three of them and claimed the Wm. Earle interest through a sheriff's deed made in pursuance of an execution sale as one of the links in his chain of title. This instrument was executed in May, 1869, by A. H. McGown, sheriff of Sabine County. As the objection to it involves only a matter of description, we do not set it out in this connection.

The tax rolls of Sabine County covering a period from 1839 to 1856 show that Matthew Earle and the Earle heirs assessed for taxes from time to time lands in Sabine County, and for some years assessed an acreage which would correspond with their claim to the Lindsey league, but the Lindsey league was not named in the rolls. That in later years the Earle heirs assessed the lands as of the Lindsey league in acreage equal to their individual interests. It fairly appears that it was claimed by them and assessed for taxes as their own. In no year subsequent to the death of Benjamin Lindsey does it appear that it or any part of it has been assessed for taxes by the Lindsey heirs or their vendees, except occasionally an acreage about equal to the 640 acre reservation. In one year 700 acres was assessed to Hines.

As against these facts it was shown that Benjamin Lindsey was first a member of Austin's colony, and as such secured a grant located on the Brazos River. That he abandoned this, and the location was officially declared vacant. That the location in Sabine County was subsequently acquired. That before his death his brother-in-law secured a certificate for a league of land. That his agents located a part of it on the Benjamin Lindsey location in Sabine County and the remainder on other lands in that county. That it so remained for a long time, and when a grant was applied for it was refused because of the prior

location of the Lindsey certificate on the same land. After many years it was floated and located elsewhere.

This peculiar circumstance is not explained in any way, and the reasons for it are matters of pure speculation. The undisputed fact remains that the Earles claimed the Lindsey league as before explained. That they rendered for taxation the parts so claimed and subsequently disposed of it, and that Mrs. Lindsey and the Lindsey heirs conceded the ownership of the Earles of all of the league, except the 640 acres reserved in the instrument of 1848.

The points made against the judgment may be briefly stated as follows: (1) The conveyance of 1848 was erroneously admitted in evidence, because (a) the description was void for uncertainty, and (b) because it did not convey the interest of the minor heirs and of Mrs. Anderson, who was a married woman. (2) It was error to admit evidence in support of the claim of a conveyance from Benjamin Lindsey to Matthew Earle because the pleadings were not so framed as to authorize the admission thereof. (3) It was error to admit the deed of sheriff McGown purporting to convey the interest of Wm. Earle because the description was void for uncertainty; and (4) the court erred in finding that there was a valid transfer of the league, less 640 acres, from Benjamin Lindsey to Matthew Earle.

The first objection to the conveyance of 1848 is without merit. It was a voluntary conveyance, and if the parties were competent to bind themselves or those they undertook to represent, it effectively conveyed the league, subject to either one of two conditions: (1) If the reservation of 640 acres is shown by the proof to have been sufficiently described by the language "except 640 acres to be taken at the old place on Bear Creek," it passed a definite part of the league; (2) if the designation of the 640-acre reservation was not sufficiently certain, it left in the grantors the right to select 640 acres at that point, and the proof shows that this was subsequently done with the acquiescence of those concerned. (Mass v. Bromberg, 28 Texas Civ. App., 145, 66 S. W. Rep., 470.)

The objection that the words "the location or right of location on Bear Creek" disclose a patent ambiguity is without merit. The evidence shows that the Lindsey survey was on Bear Creek, and was his only location in that section of the country. So in either event the instrument bound those who were competent to bind themselves.

We think also it is fairly made to appear from the evidence considered as a whole that the 640-acre tract was definitely known by the name of the "old place," and that subsequent conveyances recognized it as a known and definite tract described generally by that designation.

The instrument was admissible for another and broader reason which will be considered further on in this opinion. That it failed to convey the interests of the minor heirs or of Mrs. Anderson is obvious, because it is not pretended that their guardians in the one case or the husband in the other were in a position to bind the real parties at interest, but this does not affect its admissibility.

The second objection to the judgment is also without merit because in a formal suit in trespass to try title the plaintiff may prove any character of title except that of limitation, no effort being made to plead

his title specifically.   (Rev. Stats., art. 5250; Parks v. Caudle, 58 Texas, 216; Bridges v. Cundiff, 45 Texas, 440.)

The case of Taylor v. Watkins, 26 Texas, 699, cited by appellants, contains expressions tending to support the proposition advanced, but they are so clearly dicta they are not even included in the syllabus as a point decided.   The rule we announce is well settled.

We will next consider the last and most important objection.   The part of the league claimed by appellee has always been wild and unsettled land.   No one has ever been in possession.   The question which confronts us has two aspects:   (1)   Can a conveyance be presumed in any case in the absence of a showing of some sort of possession under a claim of ownership; and (2) if it can, does the proof sustain the presumption of a grant as found by the trial court?

It is stated in Garner's case, 71 Texas, 435, that in countries where the lands are largely unsettled and actual possession the exception and not the rule, the doctrine that possession is indispensable to the presumption of a grant does not apply.   The authorities are reviewed and it is broadly stated that the decided weight of authority supports the conclusion reached.   As that case was subsequently approved in Baldwin v. Goldfrank, 88 Texas, 249, we do not feel inclined to review the question at length.   Our attention has been called to an expression used by this court in the opinion in Simmons v. Hewitt, 12 Texas Ct. Rep., 750, bearing upon the point under discussion and inconsistent with the views here expressed.   The expression was not necessary to the decision of that case, and the rule was stated too broadly.   It is generally true that some sort of possession is required to authorize the presumption of a grant, and when the court indulges the presumption as matter of law it is perhaps invariably required.   But where the issue is one of fact for the jury it is not perceived why the execution of a conveyance may not be established by circumstances as any other fact the existence of which a jury may be called upon to determine.

In Bounds v. Little, 75 Texas, 516, Justice Gaines quotes with approval the following from Mr. Starkie's work on evidence: "It has been doubted whether the doctrine of presumption as to the execution of deeds of conveyance has not been carried to too great a length.   The reasons, however, which have been urged on the subject are properly applicable to legal and artificial presumptions only.   That is to such as are made by the courts directly by means of a jury, and not to such conclusions of fact as are made by a jury upon a full conviction of the truth of a fact by the natural force of evidence.   To the weight and importance of circumstantial evidence to prove the actual execution of a conveyance whose existence can not be directly proved there is no limit short of that which necessarily produces actual conviction, and there seems to be no rule of law which excludes such evidence from the consideration of the jury.   If there were it would be a singular and anomalous one which shuts out evidence of a nature and description admissible in every other case, however important the consequences, even upon trial for murder and treason.   Juries are bound to decide according to the actual truth of the facts.   It would therefore be absurd and inconsistent to say that a jury was not to be allowed to find according to the real

fact when they are satisfied that an actual conveyance has been executed." (2 Starkie on Evidence, 924.)

It is true in the case last cited the opinion was expressed that before such evidence was admissible search for the deed should be shown to have been made, but in the case before us that would not be required because if there was a conveyance from Lindsey to Earle it was made prior to 1840, and therefore at a time when conveyances of lands were not required to be in writing.

Applying the rule to the facts let us see if the trial court sitting as a jury was justified in presuming that in some transaction between Earle and Lindsey the latter sold him the league, reserving the 640-acre home. The parties were brothers-in-law, lived near each other and were friendly. The claim of Earle was openly asserted. When the widow of Lindsey fell heir to the property (and she was a sister of Earle) she recognized his claim and conceded his ownership. Her heirs did likewise as to the heirs of Earle. Earle and his heirs made open claim and exercised acts of ownership. They assessed the land for taxes. The heirs of Lindsey made no claim. They neither assessed it nor paid taxes on it. They disposed of only the 640 acres reserved. It was not included in the inventories of any of the estates of the Lindsey decedents, or the minors, and this notwithstanding the fact that Anderson, the husband of one of the Lindsey heirs, and one of the Earles were intimately concerned in the disposition of the Mary Lindsey estate and the estates of certain minors. Anderson signed the deed of 1848, and it purported to affect his wife's interest.

It was also testified by one of the signers of the deed of 1848 that he learned at the time that the instrument was being executed in pursuance of a transaction had between the deceased Lindsey and the deceased Earle. Thus the instrument, itself a quit-claim, was admissible in evidence for this broader purpose, and becomes a powerful circumstance in support of the conclusion that the parties at the time had knowledge of the former transaction and wished to embody it in a written instrument susceptible of record. Under all these circumstances may not the court have well concluded that the facts were absolutely inconsistent with any other conclusion save that the land had passed to Earle by some transaction between him and the deceased Lindsey? We are of opinion the conclusion of the trial court is supported by the record.

The remaining objection requiring our notice is to the introduction of the sheriff's deed to the interest of Wm. Earle. Without entering into a discussion of the question we express the opinion that in the light of the explanatory proof that the 640-acre Lindsey home was a well-known tract, the sheriff's sale of an undivided interest in the remainder was sufficiently described. But even if this is not a sound conclusion, the objection will not avail defendants, because Ridge has shown himself entitled to an undivided three-fourths, and as against the Lindsey heirs and the claimants under them he was entitled to judgment for the whole.

No material error being disclosed, we are of opinion the judgment should be affirmed, and it is so ordered.

*Affirmed.*

### ON REHEARING.

In the main opinion we stated that the case of Taylor v. Watkins, 26 Texas, 688, was not in point on the proposition that a plaintiff in trespass to try title is required to plead specially the execution of a conveyance in his chain of title if he wishes to establish the conveyance by circumstantial evidence or ·fact presumption growing out of circumstances proved. We added the comment that what was said upon the question in that case was dicta and was not mentioned in the syllabus as a point decided. This comment, insofar as the syllabus is concerned, is inaccurate, and the writer is now unable to account for the error. We still think, however, the point was not up for decision, as the plaintiff in that case undertook to plead his title specially. Nor was the point up for decision in Yancy v. Norris, 27 Texas, 40, cited by appellant in his motion.

Montgomery v. Carlton, 56 Texas, 361, simply decides that one relying upon a parol gift of real estate must allege and prove such facts as take the conveyance out of the statute of frauds. Taylor's case and Norris's case, *supra,* have been many times cited in subsequent decisions and invariably followed upon the questions actually decided therein, but in no case of which we are aware have they been cited upon the point here presented, nor has any similar holding been made as to proof of a transfer from circumstantial evidence.

In Daily v. Starr, 26 Texas, 564, the point was made by appellant who had been sued in trespass to try title and cast in the suit. The statement of the case discloses that plaintiff did not plead his title specially, but merely alleged title in himself. The point was made that the general allegations did not authorize proof sustaining the existence of a power to execute one of the deeds in plaintiff's title. The point was ignored as unworthy of notice and the judgment affirmed. The pleadings and proof admissible thereunder in trespass to try title are governed by statute, and the only legal title required to be pleaded specially is title by limitation. (Ortez v. State, 86 S. W. Rep., 46.)

Such a title in this State does not rest upon a presumption of a deed. A compliance with the requirements of the statute vests title, though the claimant might admit he had no other and laid no claim to title by conveyance. Our statutes of limitation are statutes of repose, and there is no kinship between them and the presumption of a deed inferable from facts and circumstances proven. The contention of appellant that because of such supposed analogy the latter must be specially pleaded as in limitation, can not be allowed.

We have found no reason to change our views upon any point decided on the main hearing of this cause. The motion for rehearing is therefore overruled.

*Overruled.*

Writ of error refused.