GREEN v. WILSON.

4-4681

Opinion delivered June 7, 1937.

*Coleman & Gantt,* for appellant.

*O. E. Gates, George H. Holmes* and *U. J. Cone,* for appellee:

GRIFFIN SMITH, C. J.   This appeal is from a judgment of $500 against appellants on a jury verdict.

Clint C. Green operates a sandwich stand in Rison, and in November, 1934, made regular purchases from the Arkansas Baking Company, of Pine Bluff.

Appellee and a brother were operating a Magnolia service station near Green's sandwich shop.   The judgment is based on an allegation that Green purchased a lemon pie from the Arkansas Baking Company; that the pie was improperly made and baked; that it was old and had deteriorated; that Green sold a part of it to appellee who ate it and became violently ill, and that Green was negligent in that no proper inspection of the pie was made before it was sold.

About ten o'clock on the morning of November 8, appellee went into Green's place and asked for a piece of lemon pie.   Green told him that he did not have any, but would receive a supply when the truck came.   Appellee says that about an hour later Green called to him, saying that the pie had been received.   "For breakfast that morning I ate an egg and a piece of toast, and had not eaten anything more until the pie came in.   After the truck came I went into Green's place.   I saw the delivery boy take a box out of the truck.   The box contained a lemon pie; it had meringue; no top crust.   I got a ten-cent cut—one piece—and ate it.   It tasted all right, and I couldn't tell there was anything wrong with it.   Later on, it commenced bothering me.   I just got sick at the stomach and dizzy."   Witness said that he noticed uneasiness in his stomach 40 or 45 minutes after eating the pie, but didn't get real sick until about half past two o'clock in the afternoon.

Harvey Thomas testified that he was working for appellee on November 8, and became sick that night. Witness did not know what caused his sickness, but remembered that about noon he ate a piece of pie at Green's place.

Tobe Henderson, night officer at Rison, testified that he ate a piece of pie at Green's place at eleven o'clock on the night of November 8, and later became sick. He, too, said that the pie tasted all right, and didn't appear to have anything the matter with it.

Mrs. C. Y. May, a witness for appellee, testified as to her experience as a baker of pies. She said that lemon pies of the kind appellee claims to have partaken should not be eaten after they are two or three days old; that deterioration and fermentation begin to show, and such pies turn dark around the edge if kept too long—"if they are not just right they will make you sicker than anything on earth."

The lemon pies sold by Green was delivered by C. Crouse, salesman for the Arkansas Baking Company. Crouse testified that he did not remember whether delivery was made to Green on the day in question, but that he was then making calls in regular course of business, and Green was being supplied from his wagon. The bakery employed several drivers. If drivers returned from their routes with unsold pies, these were put back on a shelf. If the pie was good, wasn't moulded and wasn't torn up in any way, it was carried out again. Witness identified a statement he had signed, saying that the pie delivered to Green November 8 had been baked the day it was sold; that it appeared to be fresh and in good condition.

Eddie Cochrane, baker for the Arkansas Baking Company, and Ollie McAllister, helper, testified that the pie was fresh. There was other testimony for the defendant baking company to the effect that nothing but standard ingredients went into the products sold, and that the pie in question was baked on the morning of November 8.

Dr. A. J. Hamilton, for appellant, in answer to a specific question, said: "John Sam Wilson had all the

symptoms of some kind of poison, but I don't know where he got it.''

. This suit is based upon negligence. The complaint alleges that ''The Arkansas Baking Company carelessly and negligently prepared and cooked said pie, and that when it was delivered to Clint C. Green by the Arkansas Baking Company, the said Green, without any examination of said pie, carelessly and negligently sold the same to plaintiff, whose life was thereby endangered and who as a consequence of the carelessness and negligence of the Arkansas Baking Company in cooking and preparing said pie, and because of the carelessness and negligence of the defendant, Clint C. Green, in offering said pie for sale, plaintiff was damaged.''

It was further alleged that the Arkansas Baking Company was negligent in selection of materials from which the pie was made and in preparing and cooking it, and in handling it; also, that it was three or four days old when delivered to Green.

Green testified that appellee was present when the pie was delivered, saw it taken out of the container, and saw it cut. In waiting upon appellee, Green dipped a knife into boiling water to keep the meringue on the pie from sticking. The pie appeared to be fresh, and there was nothing to suggest that it was not wholesome. Appellee had the same opportunity of inspection. He, too, saw the pie, and testified that it looked all right. The driver who made deliveries to Green testified that old pies were not sold; and, while he did not remember the particular transaction, he did know the custom with respect to care, and this custom had not been deviated from.

Witnesses for the baking company stated that all pies supplied to the driver who served Green were made on the morning of delivery, and that the making and baking processes were modern and sanitary in all respects, and all ingredients came from nationally-known manufacturers. These ingredients were fresh and had not deteriorated.

Against this evidence is the admitted fact that appellee ate the pie; that three hours later he became violently ill; that his malady was diagnosed as poison-

ing, and that two others claimed to have eaten pie and to have suffered ill effects. Green testified that he and his son ate some pie, and were not affected.

In *Lewis* v. *Roescher,* 193 Ark. 161, 98 S. W. (2d) 956, the distinction between liability under an implied warranty, and liability by reason of negligence, as applied to the sale of foods, is dealt with. Quoting from *Great Atl. & Pac. Tea Co.* v. *Gwilliams,* 189 Ark. 1037, 76 S. W. (2d) 65, the opinion approves the rule laid down in 11 Ruling Case Law, 1118, as follows: "Persons who engage in the business of furnishing foods for consumption by man are bound to exercise care and prudence respecting the fitness of the articles furnished, and they may be held liable in damages if, by reason of any negligence on their part, corrupt or unwholesome provisions are sold and persons are made ill thereby." And again: "In an ordinary sale of goods the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands, according to the assertion of many courts, an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it is purchased." The following paragraph in the opinion quoted from (189 Ark. 1037, 76 S. W. (2d) 65) is in point here: "The retail dealer is not a guarantor, and this case is not founded upon that theory, but he is charged with the exercise of ordinary care to sell sound and wholesome products, meaning that degree of care necessary for the protection of customers against impurities or contamination that might ordinarily be discoverable by any usual or ordinary tests. This cannot mean, however, that the retail dealer must make or apply such tests as would in every case operate to insure absolute safety. Hidden or concealed imperfections or contaminations might require microscopical tests or chemical analysis for their discovery. Under present conditions, such requirement would prove so burdensome that

many articles in ordinary use could not be handled by the ordinary dealer, and consumers would be denied the right to buy such products. In other words, such a test, if applied under the ordinary conditions, would be equal to requiring the dealer to become an insurer of the absolute perfection of the commodity sold. The test should not be higher than that commonly or usually practiced by careful dealers under the same conditions and circumstances, which is at least as high as the consumer expects, or has the right to expect of his groceryman or food dealer.''

In *Coca-Cola Bottling Co.* v. *Swilling,* 186 Ark. 1149, 57 S. W. (2d) 1029, this court said: ''The retailer owes to the consumer the duty to supply goods packed by reliable manufacturers, and such as are without imperfections that may be discovered by an exercise of the care, skill and experience of dealers in such products generally. This is the measure of the retailer's duty, and, if he has discharged it, he should not be mulcted in damages because injuries may be produced by unwholesomeness of the goods. As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held to be implied by the latter. The annotated cases cited in the notes to the text quoted appear to sustain the text.''

In a more recent case, *Kroger Grocery & Baking Co.* v. *Melton,* 193 Ark. 494, 102 S. W. (2d) 859, the appeal dealt with a claim by appellee that he was made ill by eating pork chops sold by appellant, it having been alleged that appellant was negligent in handling and keeping the chops, and that they became contaminated, or ''tainted.'' Appellee testified that he saw the chops when they were taken from the wrapper, that they were clean, and that he detected nothing wrong. In deciding the case this court said: ''It would appear that appellee was unable to detect anything wrong with the chops after handling, cooking, and eating them. Only a microscopic examination would have enabled appellant's salesman to make that discovery. The law imposes no such degree of care upon the dealer. * * * But if it were

sufficiently shown that appellee's illness was in fact caused by eating the chops, that fact alone would not entitle him to recover. He must show, in addition, that appellant was guilty of negligence in connection with the sale of the chops."

In the instant case, appellee had been advised that he would be called to the lunch room when the pies arrived by truck. At eleven o'clock he was informed that his order could be filled. Appellee saw the pie taken from the original package, saw it cut, and immediately ate it. He was in the presence of Green, who dipped in boiling water the knife he (Green) used to cut the pie. It is clear that appellee knew how the transaction was being handled, and it is obvious that he did not rely upon Green to make an inspection. This is sufficient to dispose of the charge of negligence as to Green.

The only showing of negligence upon the part of Arkansas Baking Company is the inference to be drawn from the fact of appellee's illness, and the illness of two others who claim that they partook of the lemon pie. A mere inference is not sufficient to fix liability.

Reversed and dismissed as to both appellants.