## WHELAN v. HENDERSON.

### No. 3851.

Court of Civil Appeals of Texas. El Paso.

Oct. 12, 1939.

Rehearing Denied Nov. 23, 1939.

Taylor & Storey and Bramlette, Levy & Dotson, all of Longview, and Banks, Nichols & Prothro, of Marshall, for appellant.

R. U. Culberson, Moore & Moore, and Weaver Moore, all of Houston, for appellee.

WALTHALL, Justice.

R. J. Whelan, as plaintiff, brought this suit in trespass to try title against Mrs. Lizzie Rowell Henderson, defendant, a feme sole, to approximately 32.75 acres of land, a part of the Reuben Bennington Survey, Abstract No. 24, Marion County, Texas. Plaintiff's petition is in the usual form of suits in trespass to try title. Plaintiff further specially pleads title by the ten and twenty-five years' statutes of limitation.

Defendant answered by general demurrer, general denial; plea of not guilty, and specially pleaded title in herself by the three, five, ten and twenty-five years' statutes of limitation.

The case was tried with a jury and submitted on special issues.

The court's charge submitted the case to the jury substantially in the following order:

Special Issue No. 1 submitted defendant's (Mrs. Henderson's) plea on claim under the ten years' statute of limitation prior to August 30, 1937.

The second issue, No. 2, submitted Mrs. Henderson's claim to a part of the land under the ten years' statute of limitation prior to August 30, 1937.

The third issue submitted Mrs. Henderson's claim to the land under the statute

of limitation of twenty-five years prior to August 30, 1937.

The fourth issue submitted to the jury to find whether plaintiff Whelan, the heir of R. W. Rodgers, exercised dominion over the land at any time during the period from August 30, 1912, to August 30, 1937.

The fifth issue submitted to the jury to find whether R. W. Rodgers, or Frances J. Rodgers, as administratrix of the estate of R. W. Rodgers, deceased, executed and delivered to R. E. Rowell a deed to the land in controversy.

The jury found in favor of Mrs. Henderson, and the court rendered judgment that plaintiff take nothing by his suit.

Appellant presents many propositions, but in view of the disposition we think to make of the case we need not consider them, and many of them, if any, may not be presented on another trial.

Appellant, in his motion for a new trial, among other things, alleged misconduct of the jury. The court overruled the motion, to which ruling appellant assigns error.

We have concluded the court was in error in overruling the part of the motion charging misconduct of the jury. The other grounds in the motion we are not considering, and they are not embraced herein.

The matters complaining of misconduct of the jury are embraced in several propositions, and without stating the propositions, we state in substance the uncontroverted testimony of several of the jurors.

■■ The evidence shows: the jury received the court's charge about three o'clock in the afternoon and began the consideration of their verdict; either before the jury had considered their answers to any of the issues submitted, or after they had failed to agree on the answer to the first issue, they voted six to five that plaintiff should have the property in the suit; the jury was unable to reach a verdict or answer on any issue during the first afternoon, and stood six to five at the end of the day for plaintiff to have the land; the next morning the jury began the consideration of their verdict, when the foreman of the jury said: "Well, the way I always understood the charge was that if there was any doubt, that it must be given to the defendant, and that was the way the conclusion was finally reached, * * * someone brought that question up and asked it * * * and I just made the remark that that was the way I always understood it

to be and that was to give the benefit of the doubt to the defendant." That was before any questions in the court's charge had been answered; when that statement had been made a vote was taken on each question separately and voted the verdict as returned. Another juror said: "Somebody (a juror) said, 'If I understand it right, that in every case you have got to give the defendant the benefit of the doubt,' and the jury then agreed that that was the proper procedure." After that statement the juror said he changed his vote on the first issue from no to yes. Other jurors testified to subtantially the same facts as above, that is, they agreed that Mrs. Henderson, being the defendant, the facts against her interest must be established beyond a doubt as in criminal cases, instead of by a preponderance of the evidence. The foreman had so stated the law. The court in the charge had defined the term "preponderance of the evidence." The evidence is clear that the foreman's statement of the law and the jury's concurrence therein prevailed and influenced the vote on every issue. We think it is immaterial that the jury acted in good faith, as undoubtedly they did. The jury must accept the law from the court and be governed by it.

The facts stated evidently show misconduct and controlled the jury's verdict on every issue.

The rule is clearly stated by Judge Harvey in Walker v. Quanah A. & P. Ry. Co., Tex.Com.App., 58 S.W.2d 4, and by Judge Critz in Bradshaw v. Abrams, Tex.Com. App., 24 S.W.2d 372, 374. In Norris Brothers v. Mattinson, Tex.Civ.App., 118 S.W.2d 460, one of the jurors studied a dictionary in satisfying his own mind in deliberating upon the issue as to whether or not appellant failed to keep a proper lookout for his own safety immediately prior to the collision, and studying the dictionary caused him to change his mind in voting upon the issue, and discussed his impressions gotten from the dictionary with the jury.

The Chief Justice concurs and approves of the foregoing, but is of the opinion that other assignments should be discussed, and what follows represents his opinion thereon, in which the writer concurs.

In view of the fact that this case will be probably tried again we deem it appropriate to notice a few matters that may then arise. Defendant, in her second amended original answer, plead general denial, not guilty, and

three, five and ten years' statutes of limitation. In paragraph eight plead facts appropriate to plead a defense under Acts of 41st Legislature, Fifth Called Session, c. 30, page 162, as amended Acts 1931, 42nd Legislature, c. 169, page 288. The portion of the act applicable appears in the Cumulative Annual Pocket Part, 1938, of Vernon's Annotated Revised Civil Statutes. It is there numbered 5519a. Insofar as applicable here, it is as follows: "In all suits involving the title to land not claimed by the State, if it be shown that those holding the apparent record title thereto have not exercised dominion over such land or have not paid taxes thereon, one or more years during the period of twenty-five years next preceding the filing of such suit and during such period the opposing parties and those whose estate they own are shown to have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such period, such facts shall constitute prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon."

It will be observed that this statute as against one holding the apparent record title to property to establish prima facie title to the property it is necessary for the claimant to prove by preponderance of the evidence the following facts: (1) That those holding such apparent legal title either have not paid taxes for twenty-five years, or have not exercised dominion one or more years during the period of twenty-five years next preceding the filing of the suit; (2) that the claimants, or those whose estate they own, have openly exercised dominion over and asserted claim to same and have paid taxes thereon annually before becoming delinquent for as many as twenty-five years during such a period. The twenty-five years, of course, elapsing next preceding the filing of the suit. The first requirement involves the proving of one or the other of the two negative alternatives.

Under number two the claimant must establish the following affirmative facts conjunctively: (a) claimants and those under whom they claim have openly exercised dominion over, (b) and asserted claim to same, (c) and have paid taxes thereon annually before becoming delinquent for the entire twenty-five years. The failure to establish any one of the facts listed under subdivisions a, b and c is fatal to the claim.

■ The compliance with all the burdens of both subdivisions one and two destroys the prima facie effect of the opponent's apparent record title and shifts the burden of proceeding with the evidence to the holder of such apparent record title to show that his title has not legally passed to others.

Special Issue No. 4 was as follows: "Do you find from a preponderance of the evidence that Robert J. Whelan, or any of the heirs of R. W. Rodgers, exercised dominion over the land in controversy at any time during the period from August 30, 1912 to August 30, 1937."

Plaintiff objected to such issue on the ground that it improperly placed the burden of proof on the plaintiff. The burden was on the defendant to show by a preponderance of the evidence that the holder of the legal title had not exercised dominion over the land for any one year of the period of twenty-five years, or, in the alternative, had not paid the taxes as provided in the statute. If either one or the other of these alternatives was established by the undisputed evidence, then, and in that event, the issue was immaterial. It is suggested that on the next trial if the issue is raised by the evidence, that the issue be reformed so as to properly place the burden of proof on the defendant.

■ Exception was also taken by plaintiff to the court's failure to give a definition of the word "dominion." In our opinion, this objection was well taken. Dominion has a distinctive legal meaning. No one, for instance, would question the necessity of defining "adverse possession" in a special issue submission. The meaning of dominion was discussed by the Supreme Court in two cases. Coles v. Parry, 7 Tex. 109, and Baker v. Westcott, 73 Tex. 129, 11 S.W. 157. 1 Bouv. Law Dict., Rawle's Third Revision, has under the word "dominion" the following: "Ownership or right to property, 2 Bla.Com. 1." Reference is then made to the word "dominion," and there appears this definition: "Perfect and complete property or ownership in a thing."

■ The true meaning of the word is to be determined to an extent from the context of the statute. We believe as used therein the exercise of dominion might be defined as follows: "The exercise of dominion over land is such open acts and conduct relative thereto as evidence the claim of the right of absolute possession, use and ownership thereof." This definition is

formulated as a suggestion, not as a direction to the trial court.

Special Issue No. 5, and the court's direction thereunder, was as follows:

"Do you find from a preponderance of the evidence that R. W. Rodgers or Frances J. Rodgers as administratrix of the estate of R. W. Rodgers, deceased, executed and delivered to R. E. Rowell a deed to the land in controversy?

"In connection with this issue, you are instructed that you may consider any facts or circumstances in evidence before you which, in your judgment, you deem to be worthy of consideration or weight to show that such deed was executed and has been lost."

■ Plaintiff objected to the direction thereunder on the ground same was a general charge and also that it was on the weight of the evidence. The issue submitted the question of the execution and delivery of a deed alone, and not whether one had been executed and lost. In determining this issue the fact of non-production might be a cogent circumstance in showing that same had not been executed and delivered. The direction enlarges the scope of the issue. It is beyond question, a comment on the weight of the evidence. It is likewise a general charge, in that, in effect, it submitted to the jury the question as to the loss of the deed. We do not think, even though the issue be differently framed, the charge should be given in connection therewith. This is not to be construed as a holding that in the case it is improper to give the jury a proper charge as to circumstantial evidence. The question as to the alternative form of the issue will perhaps not arise in another trial.

There is some difficulty in determining whether the special charges requested by defendant should not have been given, or some of them at least. All title Mrs. Henderson had to the land was derived from her father or the devisees of her father or their heirs, excluding, however, from this statement any title she acquired from her own adverse possession and confining same, of course, to the land west of the road. The evidence fails to establish adverse possession of the land by her father west of the road. If adverse possession is shown by the evidence, it did not commence until 1901 or shortly prior thereto. In 1901 the partition deed was made partitioning the property of Robert E. Rowell between defendant and her co-devisees.

■ We are inclined to the view that Special Issue No. 1 should have been given, wherein it was sought to have submitted as to whether defendant made continuous claim to the land west of the road.

The assignments as to the admission of evidence present no error.

The assignments of error as to the sufficiency of the evidence are overruled with this statement relative thereto, that the evidence is not so clear and undisputed as would justify reversal and rendition of the judgment rendered in favor of plaintiff to the Rodgers' land west of the road. On another trial the evidence may be different.

The case is reversed and remanded.

On Motion for Rehearing.

WALTHALL, Justice.

On considering appellee's motion for rehearing we have concluded to write more fully on the question of the misconduct of the jury than we did in the main opinion.

The question presented is, to us, not easy of solution. We have found no case which we consider as fully deciding the point at issue. As said by Judge Ryan, of the Commission of Appeals, in McClintic et al. v. Young Corporation, 66 S.W.2d 676, 678, "The object of every trial is to give the parties a fair hearing according to the facts and circumstances properly before the jury."

We have sufficiently stated the facts in the opinion.

Here the jury went outside the record and adopted a statement of the foreman, controlling in its effects, wrong in theory and in the law given them in the charge by the court for their guidance in finding the facts upon which the judgment of the court must be based.

■ We recognize the rule laid down by the courts in other matters pertaining to the trial of cases, such as in argument of counsel, that a statement made, strictly speaking, may be outside the record, yet it does not necessarily constitute reversible error or the basis for valid objection, if the statement relates to a matter of common knowledge, Traders & General Ins. Co. v. Peterson, Tex.Civ.App., 87 S.W.2d 322; Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.

2d 1032; or a matter judicially known, Winnsboro Cotton Co. v. Carson, Tex.Civ. App., 185 S.W. 1002; or, as the rule has been expressed, if the statement relates to a subject as well known to the average juror as the Ten Commandments. Such statements, while regarded as improper, are not reversible errors. Improper matters happening may be withdrawn, or the court may direct that no consideration be given to it.

The sanctity of the juryroom and of jury verdicts, as said in Estep v. Bratton, Tex. Civ.App., 24 S.W.2d 465, and other cases, and referred to in 41 Tex.Jur. p. 836, par. 97, has been the source of much confusion and troublesome to the courts. From the authorities there referred to is said, "It is, however, agreed that juries must not be permitted to come in contact with any influence outside of the testimony, however subtle and impalpable it may be. They must accept the law from the court and obey its instructions." It is also there said that where misconduct is shown, "and there is reasonable doubt as to the effect," or, "the decision of any other material issue, the doubt will be resolved against the verdict." The last quotation is sustained by many cases referred to in note 6 on page 8337, 41 Tex.Jur. It is there said the verdict will be set aside if there is a reasonable doubt as to whether a single juror was influenced by the improper conduct. Such is not the rule as to immaterial matters, or where it is shown beyond doubt not to have affected the verdict. In Stepp v. Texas & Pacific R. Co., 20 S.W.2d 324, by the Beaumont court, in an action by a passenger for damages for wrongful ejection from train, improper argument of one juror during deliberation that if passenger got judgment she would not get anything, since the railroad would appeal and secure a new trial and finally win the case. It was shown that the argument of the juror influenced one juror, and constituted reversible error. Now, where the jury intentionally found an amount beyond that sued for or the evidence showed, the error could be cured by a remittitur.

In Texas Employers' Ins. Ass'n v. Henson, Tex.Civ.App., 31 S.W.2d 669, 673, where one juror stated to another his construction of the court's charge that appellee be given the benefit of the doubt as to the proper answer of the special issues, the Eastland court said: "We do not believe that we can hold, as a matter of law, that the juror's expressed misconstruction of a court's charge is misconduct requiring a new trial."

In Kindle v. Packing Co., Tex.Civ.App., 103 S.W.2d 471, the trial court gave to the jury the definition of proximate cause as applied to a special issue. A juror (Smith) made an argument to the jury on the meaning of the term "proximate cause," as used in the court's charge. Smith claimed that proximate cause meant the whole cause; that he had served on juries, had been around the courthouse and come in contact with that word or its meaning. The result of Smith's argument was that some of the jurors changed their vote, and the jury agreed on Smith's version of the court's charge. It was held not such act of misconduct as to cause a new trial. It was simply a misconstruction of the court's charge. We think it apparent that the conduct of the jury in the instant case was an effort of the jury to follow its own method of reasoning rather than failure to properly understand and apply the court's charge on preponderance of the evidence.

In Green v. Enen, Tex.Civ.App., 270 S. W. 929, 930, in a suit on a note Green pleaded non est factum. One juror, to demonstrate his contention that a man never writes his name the same way twice, proceeded to write his name several times, and wrote other names. During the argument one juror agreed that when a person put his name on a piece of paper, "he has to pay for it whether he thinks he ought to * * * or not," and one juror "mentioned something about a note he had to pay." One of the grounds claiming misconduct of the jury was, that the statement of the juror "embraced an erroneous view of the law." In the opinion the San Antonio court said: "They [the jury] are entitled to summon these things to their aid in composing their differences, so long as they do not testify to facts dehors the record, and with assumed authority pronounce specific rules of law in conflict with the law of the case."

Here, the evidence of the jurors shows the jury was not discussing any part of the court's charge, they were not trying to arrive at the meaning of the "preponderance of the evidence," but assumed for themselves the rule they adopted and applied in deciding the facts of the case.

The facts, in our opinion, were not decided by the jury by law given them by the court, but by a law of their selection.

The motion is overruled.

PRICE, Chief Justice (concurring).

In concurring in the overruling of appellee's motion for rehearing, the writer, while not desiring to dissent from the opinion respecting the issue of misconduct of the jury, does not entirely give assent to the views therein expressed. In my opinion the misconduct amounted only to "the jury's expressed misconstruction of a court's charge." Texas Employers' Ins. Ass'n v. Henson, Tex.Civ.App., 31 S.W.2d 669, 673. However, there is room for a reasonable difference of opinion on the proposition.

The judgment for the defendant for the land west of the road had basis on three findings of the jury: (1) the ten years' statute of limitation; (2) the twenty-five years' statute; and (3) the issue as to the lost deed. In regard to the ten years' statute I believe this court was in error in holding that the trial court should have given the special issue requested by defendant. The matter was perhaps sufficiently submitted in other issues given by the trial court. However, I believe the evidence was insufficient to require the submission of the ten years' statute to the jury. The evidence was very unsatisfactory as to a continuing, visible appropriation and use of the land for ten consecutive years. The view of the writer is that it was error for the trial court to refuse to set aside this finding on account of the insufficiency of the evidence to sustain same.

With what was said as to manner of the submission of the issue arising out of the twenty-five years' statute I believe our opinion was correct.

There is grave doubt in my mind as to the sufficiency of the issue alternatively submitted whether R. W. Rodgers or Frances J. Rodgers, as administratrix, executed and delivered a deed to R. E. Rowell to support a finding in favor of defendant. If evidence there was to support the submission of the issue, it is about as cogent to show that one did so as that the other did so. If the jury found the administratrix did so, the deed, under the evidence, was ineffective to convey. Jobe v. Osborne, 128 Tex. 509, 97 S.W.2d 939; Butler v. Cole, Tex.Com. App., 53 S.W.2d 1010.

In the case of Masterson v. Harris County Houston Ship Channel Nav. Dist., Tex. Com.App., 15 S.W.2d 1011, loc. cit. 1015, 67 A.L.R. 1324, Judge Short gives this rule as a guide for determining the sufficiency of the evidence to sustain the finding of a lost deed: "The true rule would seem to be that if, from all of the facts and circumstances introduced in evidence, it is more reasonably probable that the claim made that a deed was executed, than that it was not, then a jury trying the case, or judge without the jury, would be warranted in presuming in favor of the claimed existence of the deed, and find accordingly."

This statement is likewise made in that opinion: "In order to raise the issue of the presumption of a grant of the land, the evidence must tend to establish, not only that *the person to whom the presumed grant is alleged to have been made asserted title thereto,* but that the owner of the alleged previous title had knowledge of and acquiesced in the claim so made. Baldwin v. Goldfrank, 88 Tex. [249], 257, 31 S.W. 1064; Magee v. Paul, 110 Tex. 470, 221 S. W. 254." (Italics ours.)

The evidence is scant at least that tends to show that R. E. Rowell ever asserted title to the land west of the road. R. E. Rowell was the alleged grantee in the alleged deed.

The charge suggested by the opinion to be upon the weight of the evidence is here repeated: "In connection with this issue, you are instructed that you may consider any facts or circumstances in evidence before you which, in your judgment, you deem to be worthy of consideration or weight to show that such deed was executed and has been lost."

It will be noted that the jury were instructed they might consider evidence to show that such deed was executed. It was not phrased to show "whether or not such deed was executed." In a way it assumes there was such a deed. There may have been certain cogent circumstances to show that such deed was executed and delivered to R. E. Rowell. Certainly there were many cogent and relative facts and circumstances in evidence to show that it was not so executed.