**SMITH et al. v. TAYLOR.**

**No. 5747.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 28, 1946.

Rehearing Denied Dec. 2, 1946.

A. A. Lumpkin, of Amarillo, for appellants.

S. E. Fish, of Amarillo, for appellee.

STOKES, Justice.

Appellee, M. F. Taylor, filed this suit against the appellant, A. J. Smith, to recover the title and possession of a lot in the city of Amarillo. The place of residence of the appellant being unknown, he was duly cited by publication and the court appointed an attorney to represent him at the trial. Appellee alleged he was the owner of the lot by a regular chain of transfers from J. H. Gouldy, the common source; that Gouldy conveyed it to the appellant and appellant conveyed it to J. R. Gaut; that Gaut conveyed it to Mrs. Orie Madden, who, on December 5, 1945, conveyed it to the appellee. He alleged that the deed from appellant, A. J. Smith, to J. R. Gaut had not been placed of record and the same was lost or misplaced and could not be found.

The attorney appointed by the court filed an answer, consisting of a general denial and plea of not guilty. The case was tried before the court without the intervention of a jury and resulted in a decree in favor of the appellee, from which an appeal was perfected by the attorney appointed to represent the appellant, and the case is presented here upon the single contention that the court erred in finding and decreeing that appellant executed a deed of conveyance in which the lot in controversy was conveyed to J. R. Gaut, and that the same had been lost or misplaced and could not be found.

Appellee contends the decree entered by the court was amply supported by the testimony and that the facts and circumstances revealed by it established that it was more reasonable to presume that appellant executed a proper deed of conveyance to J. R. Gaut than it was to presume that such a deed had not been executed, and, therefore, the court did not err in entering the decree.

The law is well established in this state that a deed alleged to be lost may be established by circumstantial evidence where it is shown that proper, but futile, search has been made in the places where the deed most likely would be found, and it has several times been held by our courts that a decree establishing an alleged lost deed is warranted where, under the evidence, it is more reasonable to presume the deed had been executed than it was to presume it had not been executed. Generally, the rule is based upon the principle that long and continuous acts of ownership by the supposed grantee, without interference on the part of the former owner, implies that a deed must have been executed or such acts of ownership would not have been permitted by the apparent owner without some kind of interference. The rule is not arbitrary but is subject to another rule equally as well established, namely, that such acts of ownership must have been knowingly acquiesced in by those who hold the apparent adverse title. Although it appears in this case that diligent search was made in the places where the deed would most likely have been found, if it

existed it was not found and no trace of it was discovered. There was no testimony by any witness to the effect that a deed from appellant to J. R. Gaut had ever been actually executed. No witness testified that he or anyone else had ever seen such a deed and there was no testimony which even remotely connected appellant with any transaction involving the conveyance of the lot to J. R. Gaut. There was no testimony to the effect that either Gaut or the appellant ever mentioned such a deed or conveyance but appellee's case rested solely upon acts of ownership by J. R. Gaut. These consisted of an ordinance of the city of Amarillo, entered August 13, 1924, assessing against the lot and Gaut as its owner the sum of $217.50 for the cost of paving the street adjacent to it; a mechanic's lien executed by J. R. Gaut to Willmering & Mullen, paving contractors, by which he gave a lien on the lot to secure the paving assessment; a deed of trust executed by J. R. Gaut, dated June 9, 1927, conveying the lot to H. A. Moriarity, as trustee to secure the payment of an indebtedness of $560 held by one Herman Schmidt; a deed dated July 23, 1927, by which J. R. Gaut and wife conveyed the lot to Mrs. Orie Madden; a certificate of the Tax Collector of the City of Amarillo to the effect that J. R. Gaut rendered the lot for taxes for the year 1926 and that a receipt therefor was issued to him on January 31, 1927. A release of the paving lien was executed by Willmering & Mullen on August 16, 1926. The deed of trust was released by Herman Schmidt on January 14, 1929, almost eighteen months after the lot had been conveyed to Mrs. Madden by J. R. Gaut. The testimony showed that the lot was vacant, containing no improvements, and had never been occupied by anyone except, at some unknown date, a neighbor placed a fence around a portion of it, and, for a few years, used that portion as a garden. The deeds and instruments mentioned were all executed within a period of about three years and the first one was dated some twelve years after the lot was conveyed by Gouldy to appellant, A. J. Smith. Thus, it will be seen that not only was there no testimony to the effect that appellant Smith ever ex-

ecuted a deed to the lot but no act was performed by Gaut in respect to possession or otherwise that would have the effect of charging Smith with imputed notice that Gaut was claiming title to it. We doubt if the three years during which Gaut exercised acts of ownership could be considered the long and continued claim of title which is one element of the condition necessary to raise a presumption of ownership under the circumstances here involved, but even if it could be so considered, there is nothing in the testimony to indicate that such acts and claims were known to the appellant or that he acquiesced in any of them, and, as we have said, such acts of ownership alone, without such knowledge and acquiescence of the appellant, and without some proof that a deed was actually executed, are not sufficient to constitute the basis for such a presumption. Baldwin v. Goldfrank, 88 Tex. 249, 31 S.W. 1064; Magee v. Paul, 110 Tex. 470, 221 S.W. 256; Bounds v. Little, 79 Tex. 128, 15 S.W. 225; Whelan v. Henderson, Tex.Civ.App., 137 S.W.2d 150; Tayloe v. Riggs, 1 Pet. 591, 7 L.Ed. 275, 279.

In Baldwin v. Goldfrank, supra [88 Tex. 249, 31 S.W. 1066], it was said by our Supreme Court: "In many courts it is held that proof of possession under the deed is necessary in order to establish such presumption. The rule that a deed or a power may be presumed after a long lapse of time is not an arbitrary one. It does not rest upon any consideration of public policy with reference to quieting titles to property. It has its just foundation in the principle that long and continuous acts of ownership, acquiesced in knowingly by those who hold an apparently adverse title, lead to the conclusion that the persons so exercising such acts have acquired the title."

If J. R. Gaut had occupied the lot here involved or performed acts of open notorious and adverse possession for a reasonable length of time, it might be that appellee could have established a presumption that appellant must have known of it and acquiesced in it. That is a question that is not before us and we are not passing upon it. As we have said, there was

no such testimony and, in our opinion, the acts of ownership that were performed by Gaut were not of such a nature as to charge appellant with notice that Gaut was claiming the property.

Appellee relies upon the case of Bounds v. Little, 75 Tex. 316, 12 S.W. 1109. That case involved a deed which was alleged to have been lost but the case was reversed because it was not shown that proper search for it had been made. The case again reached the Supreme Court and is reported in 79 Tex. 128, 15 S.W. 225, and from the opinion upon the last appeal, it is clear that the holding of the court, to the effect that sufficient proof had been offered to form the basis of a presumption that the alleged lost deed had actually been executed, was not based alone upon acts of ownership by the alleged grantee. The alleged lost deed in that case was alleged to have been executed by Mary A. Little, by which she conveyed a 200-acre tract to her son, Robert J. Little, and the opinion reveals that Robert J. Little had simultaneously conveyed another tract to his mother, Mary A. Little, and in his deed the consideration was recited as being certain cash "and the further consideration of 200 acres of land described in a deed from Mary A. Little to himself of even date therewith". It is shown also that a number of witnesses testified to facts which included admissions made by Mary A. Little and her devisee, which tended to prove she had executed to Robert J. Little the alleged lost deed. It was also shown that the defendant, Bounds, had notice of that fact before he bought or paid for the land. It is evident that the Supreme Court considered those facts and circumstances sufficient to establish not only the presumption that such a deed had been executed but that Mary A. Little had made admissions which tended to prove she had executed the alleged lost deed.

■ There have been many decisions of our courts involving the question of lost deeds and it has a number of times been held that an alleged lost deed may be established by circumstantial evidence. In some of the cases, the question of knowledge and acquiescence by the alleged gran-

tor of the acts of ownership by a supposed grantee seem not to have been in issue, but in all of the cases we have examined, where that phase of the question was involved, our courts have consistently held that there must be something in the evidence which reveals the knowledge and acquiescence of the alleged grantor or that is sufficient, at least, to put him upon notice that the alleged grantee was claiming title to the property. Such notice or actual knowledge and acquiescence not having been established in this case, and there being no testimony of any acts or circumstances that would charge appellant with notice that J. R. Gaut or any other person was claiming title to the lot in controversy, we are forced to the conclusion that the appellee was not entitled to the decree rendered in his favor by the court below. The judgment will, therefore, be reversed and the cause remanded.

### On Motion for Rehearing.

In his motion for rehearing appellee asserts that the evidence was such as to warrant a presumption of fact, as distinguished from a presumption of law, that appellant A. J. Smith had executed a deed conveying the lot in question to J. R. Gaut. He contends that the finding of the trial court to that effect, being a question of fact, and supported by testimony, is binding upon this Court and that we were in error in holding such presumption was not warranted by the evidence. We held that the presumption was not warranted because there was nothing in the testimony which indicated a deed had actually been executed by appellant nor anything which revealed knowledge or acquiescence of appellant concerning Gaut's possession of the lot nor anything which brought home to appellant and put him upon notice, that Gaut was claiming title to the property.

In support of the motion appellee cites us to the cases of Humphreys v. Green, Tex.Civ.App., 234 S.W. 562; Arthur v. Ridge, 40 Tex.Civ.App. 137, 89 S.W. 15; Brewer v. Cochran, 45 Tex.Civ.App. 179, 99 S.W. 1033; Dailey v. Starr, 26 Tex. 562. A careful reading of those cases will reveal that in each of them there was present one or more of the conditions which

we held to be essential to a presumption that appellant had executed the deed which was alleged to have been lost.

In the Humphreys case it was shown that W. F. Hardin, successor in title to the alleged grantee in the lost deed, three years prior to his death in 1905, executed a right-of-way deed to Security Oil Company under which it procured the right to construct a pipe line across the land; that the deed was placed of record and the privilege was exercised by the oil company for more than ten years with no protest from William Green. It was further shown that Hardin's daughter rented• the land to a tenant and that although William Green lived within two or three miles of it for a number of years, he made no protest or adverse claim of any kind. It was also shown that the land was sold under a judgment against J. B. Simpson, through whom appellant claimed, to her ancestor, Wm. F. Hardin, and, in the ancient constable's deed, it was described in part as the same land conveyed to Simpson by B. M. Green, appellee's ancestor, by deed dated April ·18, 1875.

In the Arthur case it was shown that Lindsey, the supposed grantor in the alleged lost deed, had established his home on a certain 640 acres of the Lindsey league; that Matthew Earle, his brother-in-law and alleged grantee, both before and after the death of Lindsey, openly asserted title to the rest of the league with the knowledge and approval of Mrs. Lindsey, who was Earle's sister and the sole devisee of her husband, which assertion and claim continued for many years before and after her death. Earle's claim to the land was also recognized and acquiesced in by the surviving children after the death of Mrs. Lindsey.

In the Brewer case it was shown that the alleged grantee in the lost deed was negotiating for the land; that he sent his agent to the owner at Beaumont for the purpose of purchasing it; that the agent afterwards wrote him a letter in which he requested the immediate remittance of $600 for the purpose of closing the deal; and it was shown that entries in the cash book of the alleged grantee included the sum

of $600 "sent to Junker", the agent who, at the time, was negotiating the purchase. There also were recitals in a number of old deeds in appellee's chain of title that the alleged lost deed had been theretofore executed by the ancestors of the appellant. The holding was that all this was sufficient to warrant the assumption that the deed had been executed.

The Dailey case involved an alleged lost power of attorney under which one Bean had sold the land as attorney-in-fact for Gavino Aranjo. It was shown that, before his death, Aranjo had made the statement that he had given to Bean the power of attorney authorizing him "to get and sell" the land. There were other circumstances such as long continued use and occupancy of the land.

Thus it will be seen that in each of the cases cited by appellee there was evidence indicating the execution of the deed, or of notice and acquiescence, or evidence of positive statements by the alleged grantors, concerning the claim of the alleged grantee in the lost deed to the land involved. The law is well settled here and in other jurisdictions that the securing secretly or through false assertions by one of the possession of property rights of another will not invest the former with, nor deprive the latter of, its ownership. There must be something of a tangible nature to form the basis of a presumption even though it be a presumption of fact. In the absence of limitations and adverse possession under statutory provisions, there must be something which brought home to the owner the claim of the one seeking to hold his property before his holding can ripen into a presumption that the owner has conveyed it to him. Neither a jury nor a court trying the case without a jury is warranted in presuming that one who owns property has conveyed the same to another without a showing of some kind that a deed was executed or that the owner was put upon notice that the alleged grantee was claiming the property and exercising acts of ownership over it. Our Supreme Court held in an early day that courts of equity, and sometimes courts of law, have indulged presumptions of grants upon possessions

comparatively brief; but, says the court, "such cases will be found, for the most part, to be cases in which the possession is aided by very strong equities in favor of the party in whose behalf the presumption is indulged". Taylor v. Watkins, 26 Tex. 688. See also Texas Employers' Insurance Association v. Mints, Tex.Civ. App., 10 S.W.2d 220; Garrett v. Hunt, Tex.Com.App., 283 S.W. 489; Drach v. Isola, 48 Colo. 134, 109 P. 748; Green v. Wilson, 194 Ark. 165, 105 S.W.2d 1074.

We have carefully considered the earnest contentions presented in the motion for rehearing but we find no reason to change the views expressed in the original opinion. The motion will therefore be overruled.