**WALLER v. NETHERY.**

No. 13615.

Court of Civil Appeals of Texas.. Dallas.

May 25, 1945.

Rehearing Denied June 22, 1945.

W. J. Durham, of Dallas, for appellant.
Jas. D. Buster, of Sherman, for appellee.

YOUNG, Justice.

Appellant's suit below was for specific performance of a written contract and title to described realty (valued at $750), alleging full payment of purchase price to original vendor, Dennis Williams, deceased; or if mistaken in this, tendering amounts due, claiming valuable improvements made under long continued occupancy. Defendant answered, asserting absolute title; and that, at most, plaintiff's right of property was merely as tenant in possession. Upon jury issues and verdict, defendant's motion for judgment was sustained; that of plaintiff for judgment notwithstanding jury answer to issue No. 2 was denied, from which adverse ruling appeal is taken.

Purchasers in the instrument sued upon were Gird Waller and wife Estella; the seller, Dennis Williams, who died April 22, 1938, appellee being his administratrix and heir at law.

. Jury issues and findings were, in effect: (1) That the contract in evidence, dated December 1, 1927, was executed by Dennis Williams, deceased; (2) that said Williams after execution of the contract did not waive its covenants and provisions relative to time and manner of making the payments stipulated therein; (3) that plaintiff failed to make payments in keeping with contract terms; (4) plaintiff did not abandon his rights under the contract; (5) plaintiff did not make payments, inclusive of taxes and insurance, as the contract required; (6) subsequent to death of Dennis Williams, plaintiff did not disclaim his interest or title to the property in question.

. Prior to date of above mentioned contract, Williams, a single man, had purchased the property described as South one-third of Lots 7 and 8, Block 1, Tones First Addition to Denison, Texas, for $750, borrowing that amount from Denison Building & Loan Association; executing deed of trust and note to the Association, payable in monthly installments of $11.25 each; also subscribing for seven and one-half shares of association stock, payments thereby becoming fixed at $16.87 per month. The contract bound Waller and wife to make and complete these payments, when title would be conveyed by warranty deed. It was agreed that time and punctuality were essential ingredients of the writing, which recited in part: "And in case the second party shall fail to make

the payments aforesaid, for a period of sixty days, and likewise fail to perform and complete each of his agreements and stipulations aforesaid, strictly and literally, then this Contract, so far as it may bind said first party, shall become utterly null and void, and the whole amount of the principal and accrued interest mentioned herein remaining unpaid, shall, at the option of said first party, become immediately due and payable, and all rights and interests hereby created or then existing, in favor of the said second party, or derived from him, shall utterly cease and determine, and the right of possession, and all equitable and legal interests hereby contracted, shall revert to and revest in said first party, without any declaration of forfeiture, or act of re-entry, or any other act of said first party to be performed, and without any right of said second party, of reclamation or compensation, for moneys paid or improvements made, as absolutely, fully and perfectly, as if this contract had never been made"; further providing for right of entry and repossession in event of noncompliance with terms and covenants thereof; for the reverting of all improvements to vendor Williams, together with moneys paid as in full for the use and rental of said premises up to date of default, relationship of the parties thereafter to be as landlord and tenant at a rental price of $10 per month. On back of the contract, in ink, were the following notations: "Payable 11.25 per mo. Interest paid to 9–1–31. Amount of interest 90.10. Balance due hereon per agreement 581.60. 3/9/32 on a/c 23.34 Balance due 581.60 11–16–32 on a/c 3.50 cash 4/8/33 on a/c 17.00 Rents applied on D. W. Williams B & L Loan 12/12/34 on a/c 23.62 1931 city tax 10.50 1931 S & Co tax 6.66, 17.16 Chgd. to A/c paid 3/9/31" In pencil: "1932 tax paid by B & L chg'd to D. W. Williams."

Just here should be noted the intervention in said cause of Denison Federal Savings & Loan Association (successor to loan company named in contract and to whom the original $750 note of Dennis Williams was payable). In such interpleader it was alleged that at a prior hearing plaintiff and defendant administratrix had agreed on a settlement of the controversy by payment to intervener of the balance due on the property, whereupon plaintiff would receive warranty deed; that pursuant thereto plaintiff did pay the balance of purchase money ($456.98) but, defendant refusing to execute said deed, said amount had remained on hand, with intervener making tender of $456.98 into court to abide final adjudication of title; and in the judgment appealed from, a return of aforesaid tender to the loan company was ordered.

Without question the contract of December 1927 was executed, under which intervener became the collecting agent of Williams for amounts due thereunder. It is obvious that purchaser Waller did not meet contract requirements, and that the payments made to and accepted by the association before 1938 were irregular, both in amounts and intervals.

Appellee contends that the contract has long since terminated by virtue of its terms; a fact issue to the same effect being determined in defendant's favor by the jury answer that Dennis Williams did not waive contract provisions relative to time and manner of performance. On the other hand, appellant urges that the instrument in question was not self-executing; that issue No. 2 had no basis in fact, the evidence conclusively establishing that the acts and conduct of Williams during his lifetime were in affirmance of the contract; and that remaining jury answers entitled plaintiff to a decree of specific performance as prayed. These diverse contentions require a resume of material facts.

M. E. Blacknall, manager of Denison Building &. Loan Association and its successor, drafted the 1927 sales contract, witnessed its execution by the parties, and supervised all that was done thereunder from its inception to time of trial (September 1944). He testified that Williams came to the association office and said that he wanted to provide Gird and Stella Waller with a home, proposing to buy the property on credit, which deal was consummated by Williams signing the $750 note, furnishing other security, taking title with cash thus borrowed from the loan company. The sales contract in suit was then executed, payable monthly as above mentioned, Williams instructing witness to credit all payments made by Waller on the association loan. Mr. Blacknall further stated that at time Dennis Williams died (1938), some $375 had been paid on the contract; that following a tentative settlement in December 1941, Waller had paid into the association $425 and interest, a total of $457, which it had tendered into court through interpleader; that as

738

to earlier installments, Waller had sometimes paid more than the contract called for, which was accepted; the depression coming on, payments became irregular both in amounts and time; that witness frequently talked to Williams about the transaction, the latter being dissatisfied but making no objection to method of payment, always saying "that Waller was having a hard time and he (Williams) wanted to help him out," and that "he would make up what Waller didn't pay." All moneys paid prior to his death were applied on the indebtedness of Williams, subsequent receipts held in escrow. According to Blacknall, the relation of the parties continued friendly, Williams at no time directing the association to cancel the contract; testifying:

"Q. Did you talk to Dennis Williams while he was in the hospital just before he died about these payments? A. Yes.

"Q. What did he say? A. He told me he was thinking about cancelling the contract, but he told me when he got out of the hospital he would come in and talk to me about it again, but he never got out of the hospital.

"Q. Did he tell you anything to do about it? A. He told me he would wait until he could come to the office and talk to me."

Parts of a letter of date January 8, 1942, written by M. E. Blacknall to the attorney for Rachael Nethery, administratrix, were admitted in evidence on behalf of defendant for purpose of impeachment, but such excerpts are not deemed inconsistent with above testimony of Blacknall given at the trial. Rachael Nethery contended that she had collected small amounts as rent from the Wallers after 1938; her daughter Ethel narrating a conversation between Williams and Waller back in 1933, when rent was demanded and $5 paid. All of this plaintiff denied, Gird Waller stating that no dissatisfaction was ever voiced by Williams to his method of payments; that prior to filing suit (July 1938) he had offered to pay administratrix the balance due, which offer was refused; detailing various improvements made on the property before death of Williams and after December 1941 (date of tentative settlement).

Appellant has been in continuous possession; as the jury found, at no time abandoning his contract rights. It is also undisputed that Dennis Williams did not affirmatively exercise his option to terminate the contract for admitted defaults, and that in 1938 about half the purchase money had been paid. As with any other contract provision, it is well settled that a right of forfeiture may be waived "by conduct on the part of the vendor in affirmance of the contract and indicating that he regards it as still subsisting, notwithstanding a default by the purchaser, or by showing an intention not to treat time as being of the essence of the contract." 43 T.J., Sec. 201, p. 349; Scott v. Molter, Tex.Civ.App., 119 S.W.2d 603; Hall v. Dallas Joint Stock Land Bank, Tex.Civ.App., 95 S.W.2d 200, writ ref.; Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S.W.2d 629. A multitude of Texas cases support the doctrine, uniformly referring back to Tom v. Wollhoefer, 61 Tex. 277, 281, where the court said: "The vendor's remedy by rescission (disaffirmance) is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance due upon the purchase money. He must not delay too long in insisting upon payment of the money as it falls due, or he will be considered as having waived the default. * * * He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance."

In Lynch Davidson & Co. v. Hudson, Tex.Civ.App., 15 S.W.2d 203, writ ref., the instrument was in the same language as the one here sued upon. There, vendors Lucas and Mayhew had not insisted upon compliance with the contract as to time and amounts of payments, accepting money tendered at other times and in other amounts. The court held that such conduct on part of vendors continued the contract in force as a matter of law; vendors thereby waiving provisions entitling them or those claiming under them to treat the contract as forfeited. Similarly under this record the great preponderance of evidence demonstrates that Dennis Williams, during his lifetime, continued to recognize the contract as a subsisting one, thus establishing conclusively that right of forfeiture on account of any previous defaults had been waived.

We conclude that plaintiff is entitled to judgment for specific performance

of aforesaid contract notwithstanding the finding under issue 2, upon his unqualified tender of purchase money due. The judgment under review is therefore reversed and here rendered in accordance; i. e., that plaintiff be invested with full legal title to the described realty and that defendant be divested of all right, title and interest therein; and concurrently with execution and delivery by appellee of warranty deed thereto, that the Denison Federal Savings & Loan Association be directed to pay over to defendant Nethery the balance of purchase money on hand as per interpleader.

Reversed and rendered with instructions.