**MURPHY v. SILLS et ux.**

No. 4888.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 5, 1953.

Rehearing Denied May 5, 1954.

Preston E. Johnson, Liberty, for appellant.

Clarence D. Cain, Liberty, for appellee.

The appellant N. W. Murphy is the plaintiff and appellees R. E. Sills and wife are the defendants and also are cross-plaintiffs.

On November 16, 1942 the plaintiff leased to the defendant Sills, in writing, certain land in the Wm. Harris Survey in Liberty County. The lease was for a term of 12 months, at a rental of $20 per month, and it contained an offer by lessor Murphy to lessee Sills to sell to Sills the demised property, or a part of it, when the lease ended. This offer is the source of the suit now on appeal.

Defendant Sills and wife moved a small dwelling house upon the property immediately after this lease was made, and they have resided upon the property since that time. They have fenced the land and have cleared some of it, apparently a large part, and they have also erected other improvements of very substantial value.

The defendants paid plaintiff the $240 rental reserved in the lease, and that is all they have paid him.

The parties disagree about what happened after the term of the lease ended. The defendants testified, in substance, that they accepted the offer to sell which the plaintiff made to them in the lease and that in 1951, the plaintiff demanded as a condition to his making a deed that they pay him some interest to which they thought him not entitled and which they refused to pay. The plaintiff testified, in substance, that the defendants never did accept his offer, although he tried to persuade them to do so, and that he eventually withdrew this offer and brought this suit.

The suit is in trespass to try title for the title and possession of a tract which, the

plaintiff alleged, included the leased premises; and the lease was pleaded in full, as an exhibit to the petition. The defendants plead not guilty and a general denial, and they specially alleged in defense their acts in acceptance of the plaintiff's offer to sell. They also plead a cross action for specific performance of this contract to convey, which they had thus charged against the plaintiff.

The cause was tried to the court without a jury and the trial court rendered a conditional judgment in behalf of defendants for title to and possession of 20 acres of land, less a mineral reservation provided in the lease, and also directed the plaintiff to make a deed conveying this property to the defendants. The condition on which this part of the decree depended was the defendants' payment of $180.38 to the clerk. The record does not show what this $180.38 represented but it evidently included the balance owed by the defendant Sills for the 20 acres of land and is large enough to include interest thereon which Murphy would have received if Sills had given him promissory notes for this balance as is provided for in the contract. The trial court awarded to the plaintiff the land claimed by him other than the 20 acres awarded defendants.

From that part of this judgment awarding defendants the 20 acres of land and directing the plaintiff to make a deed conveying this land to the defendants the plaintiff has appealed, assigning five Points of Error for reversal.

■ No findings of fact have been made: The trial court's judgment therefore impliedly determined all issues of fact in favor of the defendants.

WALKER, Justice.

Points 1 and 2 assign as error that the description of the land which Murphy offered in the lease to sell to Sills and that the description in the judgment of the 20 acres awarded to Sills are too indefinite and uncertain to be applied to any land. It is claimed that this uncertainty is in the words of these descriptions; the plaintiff does not say that extrinsic proof has made an apparently sufficient description ambiguous.

In his petition the plaintiff first alleged title to a "parcel of land * * * in Liberty County, Texas * * * a part of the Wm. Harris survey * * * described as follows: that part of the L. K. Moss tract in the Wm. Harris League * * * bounded on the west by the G. R. Morris 200 acre tract and on the north by the north line of the League and on the east and south by the M. S. Fortier 50 acre tract * * * containing about 112 acres * * *." This description was taken from the only deed to the plaintiff which was proved, namely, the deed of 1930 from persons who described themselves as heirs of Ashly W. Spaight. Among other documents, the plaintiff proved the field notes of the league and conveyances locating on this league a Granville R. Morris 200 acre tract and a tract conveyed by E. C. Fortier and wife, Mary S. Fortier. The evidence indicates that the L. K. Moss tract referred to in the plaintiff's deed and in the petition, and that part of said tract conveyed to the plaintiff, could be located on the ground; the description in plaintiff's deed and this same description in the petition is at least not patently insufficient.

The plaintiff, having alleged title as stated, next alleged, in substance, that the land leased to the defendants was a part of the tract owned by the plaintiff and that the defendants, acting under their lease, had taken possession of and yet held the leased premises.

The material parts of this lease are as follows:

"It is agreed that N. W. Murphy has rented to R. E. Sills a part of the acreage lying in the Wm. Harris Survey, on the East side of the Wallisville Road: Beginning at a point on the east side of the Wallisville Road at a distance of 210 feet South of the Northeast corner of the Volney Hilton line on the West side of the Wallisville Road and running in an Easterly direction across the marsh to the east line of the Murphy acreage, and including all the acre-

age in said tract south of said line, for a monthly rental of $20.00 per month payable in advance."

"It being a further condition of this agreement that if said payments are not duly paid as herein provided at any time after thirty (30) days, that said Murphy may have the right to dispossess and move from premises said tenant at any time after ten days written notice by registered mail to his last known address, and retain any improvements such as houses, fences, or other fixed improvements."

"It is further a part of this agreement that if the said Sills should well and truly pay the said rental according to the terms and tenor of the agreement as herein provided, that the said Murphy agrees to sell to the said Sills whatever acreage of land that may be found in said tract South of the line herein described, or up to twenty (20) acres as a correct survey may develop when duly surveyed, in said South part of said tract south of the line above stated, at the price of $20.00 per acre, and apply the first twelve (12) months rental as a cash payment, namely $240.00. When said monthly payments have been duly paid, said Murphy agrees to make to said Sills a Special Warranty Deed to said property of what ever acreage it may contain or up to twenty (20) acres, Save and Except ¾ of all minerals that said property may contain or later be developed which is reserved by N. W. Murphy, Lessor, his heirs or assigns, with full rights of ingress or egress for the exploration thereof, and take his notes for any balance that may exist after deducting the cash rental paid as above stated, payable at $20.00 per month, with interest at 5%, secured by Vendor's Lien notes and Deed of Trust on said property."

The judgment, in describing the land awarded to the defendants, uses the description of the land which was awarded to the plaintiff, and in making the description of the plaintiff's land repeats the allegations of the petition we have quoted. From this latter description is excepted land described as in the lease. The material parts of the judgment read: " * * * decreed * * *

that plaintiff * * * recover of the defendants * * * title to and possession of the following * * * property * * *; that * * * parcel of land * * * in Liberty County, Texas, * * * a part of the Wm. Harris Survey * * * more fully described as follows: that part of the L. K. Moss tract in the Wm. Harris League * * * bounded on the west by the G. R. Morris 200 acre tract and on the north by the north line of the league and on the east and south by the M. S. Fortier 50 acre tract * * * containing about 112 acres * * *. Save and Except * * * the surface and * * * (¼) of * * * the oil, gas and other minerals in * * * that * * * tract containing exactly 20 acres, being a portion of the above described tract * * * and * * * out of the south part of that portion of said tract * * * south of a line described as follows: Beginning at a point on the east side of the Wallisville Road at a distance of 210 feet south of the northeast corner of the Volney Hilton line on the west side of the Wallisville Road running in an easterly direction across a marsh to the east line of the Murphy acreage, which acreage is the tract hereinabove decreed to the plaintiff and cross-defendants. * * * Further, * * * Decreed that defendants * * * R. E. Sills and wife * * * recover title to and possession of all that * * * 20 acres * * * parcel * * * out of the above 112 acre tract * * * situated as follows: * * * Exactly 20 acres out of the south part of the said N. W. Murphy 112 acres * * * in * * * said Wm. Harris Survey, Liberty County, Texas on the east side of the Wallisville Road; said 20 acres to be out of the south part of land lying south of the * * * line; Beginning at a point on the east side of the Wallisville Road at a distance of 210 feet south of the northeast corner of the Volney Hilton line on the west side of the Wallisville Road running in an easterly direction across the marsh to the east line of the Murphy acreage."

Points 1 and 2 are overruled. The description of the larger tract claimed by the plaintiff seems to be legally certain, as we have stated; and the petition declares that

the land leased is a part of this tract. This brings us to consideration of the description of the demised property.

The first element of this description to be noted is the direction of the north line of the land leased, which begins at a point in the Wallisville Road and runs "in an *easterly direction* across the marsh to the east line of the Murphy acreage." The word *easterly* is not qualified by any other part of the lease. See: Fratt v. Woodward, 32 Cal. 219, at page 227. The concluding paragraph we have quoted from the lease shows that the parties had a definite tract and maximum acreage of this tract in mind, and this fact indicates that the parties thought the course of the line was definitely fixed. Under the circumstances and under the decision cited, we construe the word *easterly* as meaning *due east*.

This conclusion means that the description of the north line of the demised property is legally certain, for the western end of that line is fixed by the description in the lease as being *in* the Wm. Harris Survey *on* the east side of the Wallisville Road *at* a point 210 feet south of the northeast corner of the Volney Hilton line *on* the west side of the Wallisville Road. These are definite monuments and are sufficient prima facie to locate the western end of the line. There is nothing in proof to indicate that these various elements of the description of the western end of the line are false or ambiguous and we are concerned only with the words of a description.

The eastern end of the north line of the demised property is described as being *in* "the east line of the Murphy acreage." This Murphy must be the plaintiff, that is, the Murphy who purports in the lease to lease the land, and to retain a right to dispossess the tenant and keep the improvements, and who in the final paragraph quoted from the lease agreed to sell the land leased, or some of it, to the lessee, *reserving* minerals for *himself*. Such provisions are enough to identify the lessor Murphy with the *Murphy acreage* in the Harris Survey, at least prima facie; and so far as extrinsic proof is concerned, this proof seemingly is in accordance with the prima facie meaning we have given the words *Murphy acreage.* For the proof shows a deed to the plaintiff conveying him land in the Wm. Harris Survey, and the plaintiff's petition admits that the land is in this tract.

The course and termini of the northern line of the demised property being fixed, so is the location of the demised premises, at least on the face of the description in the lease. For the land leased is "the acreage in said tract south of said line." What tract? Only two tracts had been referred to, namely, the Wm. Harris Survey and the *Murphy acreage,* and the *Murphy acreage* south of the line was necessarily leased, for the eastern end of the line was in the *"East* line of the Murphy acreage." Further, the circumstances we have referred to in discussing the eastern end of the northern boundary, all of which are taken from the lease itself, imply that "said tract", the south part of which was leased, was also the "Murphy acreage." Not only does the lessor assume to lease and promise to sell; he reserves minerals, thus implying ownership of the land in which the minerals are reserved; and lessor also reserves in writing, in a certain case, the right to keep improvements on the land made by the lessee. The extrinsic evidence shows that the parties have never had any difficulty or disagreement in applying the description of the demised property to the ground. The lessee took possession immediately after the lease was made and he has held possession for many years. The lessor knew where the lessee was and accepted rent from the lessee for the terms of the lease. The lessor also knew where the lessee had put his fence and other improvements, and he said that he had once objected to a northern extension of the lessee's fence. Two surveys of the demised property have been made, one in 1946 by the lessor and one in 1947 by the lessee, to calculate the area of the land leased, and in each case, according to the defendant Sills, the result was the same; the area was found to be 29 acres. The plaintiff's letter to Hartell of August 28, 1951 states that a survey had shown this area to be 29.1/8 acres, but this difference be-

tween lessor and lessee is not material. These surveys could not have tallied if the location of the boundaries of the demised property had been uncertain.

However, the acreage shown by these surveys now brings into consideration the sufficiency of the description which is contained in the lessor's promise to sell. This promise was "to sell to * * * Sills whatever acreage of land that may be found in said tract (the reference is to the tract leased) south of the line herein described (this is the northern boundary of the demised property) or *up to* twenty * * * acres as a correct survey may develop when duly surveyed, in said south part of said tract south of the line above stated, at * * * $20.00 per acre * * *" less $240 rental already paid.

The sufficiency of the description of the land which lessor offered to sell to Sills depends in the first instance upon the meaning to be given the lessor's promise. The evidence shows that when the lease was made the land leased was uninhabited and that it had to be cleared by the lessee. We think that the lease itself shows that the parties did not know what the area of the leased tract was, and they must have contracted with reference to this fact. The lessor's promise then seems intended to apply to two cases, that where a survey of the leased premises (not of the 20 acres to be sold) shows the demised property to be 20 acres *or less* and that where the survey shows it to be *more* than 20 acres. The words "up to twenty * * * acres" suggests that lessee might choose how much acreage he would buy and, as an incident, where it would lie (as long as it was in "the south part of said tract"); but the words "up to twenty * * * acres" are written as an alternative to the promise to sell "whatever acreage of land that may be found in said tract south of the line herein described." The circumstances under which the lease was made make it more probable that no choice by the lessee was intended and that the words "up to twenty * * * acres" were simply a limitation upon the acreage which the lessor was bound to sell, made because the par-

ties did not know what the area of the demised property amounted to. That is, the lessor's promise is to sell to lessee all of the land leased if it is 20 acres or less, but if it is more, then 20 acres "in said south part of said tract."

We think this construction implies that the 20 acres "in said south part of said tract" is simply the south 20 acres of the leased premises. For if the land leased had been 20 acres or less, the lessor's promise, under our interpretation of the description of the leased premises, would have been one to sell lessee that part of the lessor's tract east of the Wallisville Road and south of a certain line. This is the substance of the description of the leased premises, and it appears to be adequate and certain. Then, if lessee was not given the right to decide how much acreage he would buy, and if the words "up to twenty * * * acres" were only a limitation upon lessor's obligation, made for his own benefit, as we have held, the parties could not have intended, if the area proved to be more than 20 acres, to convert a definite description of a fixed tract into an indefinite one and to loosen the lessor's promise and the lessee's right from a fixed and identifiable tract and fasten obligation and right to a floating or unidentifiable piece of land. The parties started out with the south part; and they must have intended to stick with this. We hold that the words "in said south part of said tract" are not to be construed alone but are to be construed with the rest of lessor's promise, which must, itself, be construed with the entire lease, and that when all this is done the word *"in"* is to be given the meaning, namely, that lessor Murphy promised to sell to lessee Sills either the demised premises or, if these premises amounted to more than 20 acres, then to sell to Sills the southern 20 acres of the leased premises.

Point 2 makes the same criticism of the description, used in the judgment, of the land awarded to the defendants but this description was evidently taken from the lease and should therefore be given the same construction and interpretation that we have given the description in the lease. So construed, the description in the judgment of

the land awarded to the defendants is adequate. Point 2 is accordingly overruled.

Points 3 and 4 present the argument that the claim plead by defendants is only a demand for specific performance of a contract for the conveyance of real estate, and was barred by limitation under Article 5531, R.S.1925.

The defendants' claim was alleged both defensively, in answer to the petition, and as a cross action for affirmative relief. In the answer the defendants alleged that they had paid the rent reserved in the lease and had duly accepted the plaintiff's offer, made in the lease, to sell them land. They alleged further that plaintiff had caused them to believe that he would perform his promise and that in reliance on plaintiff they had made valuable improvements. They offered to pay whatever was owing to the plaintiff under the contract between them, and their answer shows that they had taken possession of the demised premises under the lease and had been continuously in possession since that time and still were in possession. The prayer appended to this answer includes the request that "plaintiff take nothing by virtue of this suit other than what is due under * * * the contract." The cross action elaborates these allegations and contains other statements, but it need not be described in detail. By exception and by special plea the plaintiff plead Article 5531 in bar of these pleas by defendants, and the plaintiff also plead laches. The exception was overruled by the trial court and the plea was denied.

The total rental reserved in the lease was paid. It was not paid in monthly installments as the lease provided, but the testimony of the plaintiff shows that he had waived any irregularity concerning these payments. The defendant Sills testified that before the term of the lease ended, and immediately after it ended, and a great many times since this term ended, during every calendar year, he had offered unconditionally to pay plaintiff the balance of the purchase price owing to the plaintiff and had requested a deed, and that the plaintiff had always promised to give him a deed but had also always postponed making a deed. He testified, further, that he was always able to pay the price of the land but had not actually tendered any money to the plaintiff. Sills' testimony shows that some six or seven thousand dollars became available to him in payment of a claim for personal injuries sustained by him and that he could have used this money to pay for the land. His testimony also was that he could have paid for the land out of wages, and it is not improbable that he could have done so since the unpaid part of the price was only $160. The trial court was authorized to infer, and we must assume that the finding was impliedly made, that the defendant Sills was trying to accept the offer to sell made by the plaintiff in the lease, and that he wanted only the land which the plaintiff had offered to sell to him and further, that the plaintiff and the defendants were not in disagreement as to what this land was.

The defendant Sills testified, further, that he had relied on the plaintiff's promises to give him a deed, and in reliance on these promises had made these improvements: (1) had cleared a large part of the land, which, according to the defendants, had been uninhabited and uninhabitable until the defendants took possession of it; (2) had twice enlarged his dwelling house at substantial expense, and (3) had erected a barn and another structure, neither of which was described.

Mrs. Sills' testimony confirmed that of her husband in many respects; and she testified, too, that she had also requested a deed from the plaintiff, that he had promised to make the deed, and that she had relied on his promises.

The evidence perhaps showed as a matter of law, but at least authorized a finding, that the plaintiff knew of the improvements made by the defendants while these improvements were being made, and that he never objected to the making of any of these improvements. According to the testimony of the defendant Sills, said defendant had last enlarged his house a year or so before the cause was tried.

According to the defendants, their improvements were valuable, and at least the additions made to their dwelling house had been costly. Sills said that the dwelling house had originally been of only two rooms; that he had bought it from an adjoining land owner for $197 and had moved it upon the land immediately after the lease was made. He later added two rooms and a kitchen at an expense of about $1,500; the evidence does not show clearly when this improvement was made, but it seems to have been done before the plaintiff surveyed the leased premises in 1946. Two more rooms and a porch had been added a year or so before the cause was tried. The defendant Sills estimated the value of the house at the time of trial to be about $6,500 and said that it had at that time six rooms, a bath and a back porch. Mrs. Sills confirmed her husband's testimony in various respects. Some trees and shubbery had also been planted by the defendants upon the premises, but there is no evidence concerning the value of any improvement except the dwelling house.

Both the plaintiff and the defendants said that the land had increased in value since the lease was made. The plaintiff was engaged in the business of buying and selling real estate and he said that the land was worth at the time of trial three or four times what he had agreed to sell it for to the defendants, that is, it was then worth $60 or $80 an acre instead of the $20 price specified in the lease. The defendant Sills estimated the value at $50 an acre at the time of trial.

The plaintiff's testimony, as we have indicated at the beginning of this opinion, contradicted that of the defendants. The plaintiff denied that the defendants had ever offered to buy the land; and his testimony was, in substance, that he finally withdrew his offer to them, after trying to persuade them to buy the land, because they would do nothing at all. He said that he had begun to fear that defendants would claim the land by limitation. Letters by plaintiff to the defendant Sills or to both defendants, the first dated July 10, 1951 and the last dated January 26, 1952 show that what plaintiff regarded as his offer was still open during the period covered by these letters; and the plaintiff did not withdraw his offer until he did so by a letter to the defendant Sills dated April 4, 1952. However, at the time of the transaction now to be mentioned, this offer was conditioned upon the defendants paying him interest since the term of the lease ended; and the plaintiff's letter of August 14th to the defendants, written about a week before the plaintiff deposited the deed now to be mentioned, indicates that he then had this demand for interest in mind.

In August, 1951, the plaintiff offered the defendant Sills a conveyance of the entire leased premises, and he deposited the deed with an agent for delivery to Sills upon payment by Sills of the price demanded by the plaintiff; and a letter by the plaintiff to his agent of deposit stated the price and the items making up the price. This price included an item of $106.26 styled in the plaintiff's letter to his agent as "interest for seven years." By a letter to the plaintiff dated August 31, 1951, the defendants' attorney rejected this offer of the plaintiff because of the charge made for interest. Counsel offered to pay the balance, which included the taxes paid by the plaintiff. The plaintiff declined to accept this counter offer by defendants' counsel. The reason given in counsel's letter for declining to pay the item of interest was Sills' previous requests for a deed and the plaintiff's failure to comply with these requests. The defendant Sills himself testified that he refused to pay this item of interest because the period of time for which the interest was charged was delay for which the plaintiff himself was solely responsible; and according to the testimony of the defendants, the plaintiff actually was responsible for the delay and was not entitled to charge the defendants any interest for this period.

According to the defendant Sills and his wife this demand by plaintiff for interest was something which the plaintiff did not bring into his transactions with the defendants until the time in 1951 when plaintiff offered to make the deed. The testimony of the defendants authorized the trial court to

conclude that until the plaintiff did this he had consistently made the defendants a series of unqualified promises to give them a deed. On the defendants' theory of the facts, which the trial court has, of course, adopted, it was this demand for interest which caused the present suit. The trial court was also authorized to conclude from the defendants' testimony that the plaintiff never made the objection to the defendants' offers that he was entitled to the vendor's lien notes which are provided for in the lease or interest which he would have earned on these notes; the defendants' testimony authorized the trial court to conclude. that the plaintiff was always willing to accept money in lieu of the notes.

It is unnecessary to discuss evidence in conflict with testimony given by the defendants for all issues of fact were impliedly found in favor of the defendants by the trial court's judgment. We proceed to discuss the legal issues raised by the facts impliedly found by the trial court and by the arguments of the parties.

Article 5531, R.S.1925, provides: "Any action for the specific performance of a contract for the conveyance of real estate shall be commenced within four years next after the cause of action shall have accrued, and not thereafter."

The defendants have stated several reasons why this statute should not be applied against them. The first is that limitation did not begin to run until the plaintiff repudiated his agreement with the defendants in April, 1952.

■ This argument is overruled on the authority of Boon v. Chamberlain, 82 Tex. 480, 18 S.W. 655, 656. Limitation began to run against the defendant Sills' right to a specific performance "upon the happening of the condition upon which the vendor binds himself to make the title." This quotation is from the decision just cited. The land leased to the defendant Sills was surveyed by the plaintiff Murphy in 1946 and was again surveyed by himself in 1947. The field notes of these surveys are not in evidence, but the testimony shows that the

results of these surveys were the same, and the defendant Sills said that plaintiff's surveyor gave him a map of the land from which a description of the land could have been drawn. The petition was filed on May 23, 1952 and the answer of the defendants' specially pleading their rights, and their cross action were filed on July 28, 1952. Since the defendant Sills had paid the rent reserved in the lease and had informed the plaintiff that he wanted to buy the land and had offered to pay for it, a survey of the leased premises was the last condition on which the obligation to perform, of either defendant Sills or the plaintiff, depended, and the plaintiff was bound to perform his promise to the defendant Sills at least after Sills' own survey in 1947. Doubtless he was entitled to payment when he delivered his deed but the testimony of the defendants is that this condition would have been met— if the plaintiff had been willing to cooperate with them. Much more than four years intervened between the survey made by defendant Sills and the date when the petition was filed. Unless there is some reason why Article 5531 should not be applied against the defendants, it would seem that the defendants' right to a decree for specific performance was barred when the plaintiff brought the suit.

The defendants say that plaintiff is estopped to rely on Article 5531 because, they say, he caused the defendants, through their reliance upon his own promises, to delay action against him during the period on which he now bases his plea of limitation and would, if his contention is upheld, deprive the defendants of valuable property by means of the defendants' faith in him.

The evidence to be considered with this argument is as follow: Defendants' testimony supports a finding that the plaintiff first postponed the making of a deed until he could survey the leased premises. This survey had to be made before plaintiff's promise to sell could be performed. Defendants' testimony shows that plaintiff assumed the duty of making this survey and promised to make this survey, and that it was not made until some date in 1946. Much more than five years intervened be-

tween this survey and the date when the suit was filed and the date when the defendants filed their special plea and cross action. After the survey, the statements and promises by plaintiff to which the defendants testify do not refer to anything which the plaintiff wanted to do before he made a deed nor was any reason given why the plaintiff wanted to postpone making a deed. Plaintiff's statements appear, instead, to be nothing but requests for delay or simple refusals to act at the particular time, accompanied in each case by a promise to give defendants the deed, without in any case specifying when this promise would be performed.

All of these representatives and promises to the defendants by the plaintiff were oral.

Defendants' testimony shows that they always acquiesced or forbore action on these occasions, but there is no evidence that they ever promised the plaintiff to delay proceeding against him or to delay insisting upon his performance. There is no evidence that plaintiff and the defendant Sills, or the defendants, ever made an agreement extending the time for the plaintiff's performance of his obligation to make the defendant Sills a deed.

The defendants also argue that they have equitable title to the land, on which they can maintain as action for the land as distinguished from one to specifically perform their contract with the plaintiff.

The only fact to be noted in connection with this argument is that the purchase price of the land (there being more than 20 acres in the demised premises) was $400; and of this price $160 had not been paid when the defendants filed their special plea and cross action.

We have given consideration to the defendants' argument concerning estoppel and to that concerning equitable title; but we are not satisfied that either can be applied in the defendants' favor under the facts of this case. We have concluded, however, that plaintiff's argument concerning Article 5531, and the Points of Error, Nos. 3 and 4, under which that argument is made, cannot

be sustained for another reason; and because of this conclusion have not determined and will not discuss the defendants' arguments about estoppel and equitable title. Article 5531 is not material for the following reasons:

■ It is held that if the subject matter of a defense to a plaintiff's claim "be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply." Morriss-Buick Co. v. Davis, 127 Tex. 41, 91 S.W.2d 313, 314. See, also: Terry v. Baskin, Tex.Com. App., 44 S.W.2d 929; Jackson v. Martin, 37 Tex.Civ.App. 593, 84 S.W. 603; Vernor v. D. Sullivan & Co., Tex.Civ.App., 126 S.W. 641; Payne v. Beaumont, Tex.Civ.App., 245 S.W. 94; Occidental Fire Ins. Co. v. Fort Worth Grain & Elevator Co., Tex.Civ. App., 294 S.W. 953.

This rule was applied in Runnels County v. Gulf Oil Corp., Tex.Civ.App., 209 S.W. 2d 969, and this application has some relevance to the issues now under discussion. Runnels County sued in equity to recover title to excess acreage in a tract conveyed by the County to the defendants' predecessor in title. The County contended that the contract of sale was for a sale by the acre, of a certain number of acres. The tract contained more acres than the County's purchaser had paid for; this excess was the land which the County sued for; and the purchaser had discovered this excess many years before the County did, but he "did not disclose there was an excess." The defendants contended that the contract of sale was different and that it was for the sale of the entire acreage in the tract conveyed. The parties, said the defendants, had simply mistaken the acreage at the time of the sale; and the defendants tendered into court the original contract price of the excess acreage, with interest. The defendants were in possession of the land at the time of the suit; the purchaser and his successors in title had been in possession of the land since the sale, and this sale had been

made many years before the controversy in suit had arisen. The trial court found that the sale was by the acre but was intended to cover the entire tract, and "concluded the defendants were entitled to the excess on payment of the original purchase price." The Court of Civil Appeals affirmed this judgment. It was contended by the County that the defendants' right to retain the excess acreage on payment of the price was barred by limitations, but the Court of Civil Appeals held that the defendants' contention was defensive in nature and was not within the operation of the statutes of limitation.

We give this decision the following effect; the legal title was in the defendants but this fact was immaterial because the County claimed title in equity; if this claim was good the defendants' legal title would have passed over to the County. The location of the legal title was the cause of the lawsuit, not a defense to it. The significant fact is that the County asserted *title*. In reply, the defendants did not assert title but, instead, rebutted the County's claim of title, that is, disproved it, by proving in answer (as "negation of the plaintiff's asserted right to recover," to use words used in Morriss-Buick Co. v. Davis) these matters: (a) the existence of a partly executed contract of sale and their tender of the unpaid balance of the price; and (b) that they were in possession of the land. Since this reply by defendants was a pure defense, and it is to be noted that the tender of the balance of the price did not prevent the reply by defendants being a pure defense, the award of the legal consequences of this defense, made by way of a denial of the County's claim, was not an award of affirmative relief. Although it was not held that the defendants' claim for the excess acreage would have been barred if sued upon affirmatively, the holding that the *defense* was not within the statutes of limitation seemingly implies that the contract, which was the principal element of the defense, continued to exist and to have legal consequences even though affirmative remedy for its enforcement might have been barred by limitation. There seems to be no justifica-

tion for the court's holding except upon this basis; and such an implication is in accord with decisions cited above, in which legal effect as a defense was given to facts although limitation had barred an affirmative remedy which those facts would have supported. The element of mistake seems to have no significance except as causing, and thus as justifying, the purchaser's original failure to pay the full price, because the purchaser discovered the mistake many years before the County did—and did not tell the County.

■■ This decision, and the rule quoted from Morriss-Buick Co. v. Davis, on which it was based, are applicable to the case under review. The plaintiff Murphy has sued for title and possession, and has alleged the lease to the defendants and that the defendants have been in wrongful possession since the 11th month of the term of the lease. That is, the plaintiff Murphy asserts title. In defense, that is, in negation of the plaintiff's claim of title and of plaintiff's claim that they are wrongfully in possession, the defendants alleged and proved their payment of all the rent reserved by plaintiff, and the existence of a contract of sale between them and plaintiff which, as a legal consequence of its existence, entitled them to stay in possession, at least on their payment of the balance owing the plaintiff under this contract. This was the sort of issue made in Runnels County v. Gulf Oil Corporation. The plaintiff Murphy does have legal title to the land while the defendants in Runnels County v. Gulf Oil Corporation had it, but this adds no more to the plaintiff's case than it detracted from the County's claim in Runnels County v. Gulf Oil Corporation. If there were no question of limitation in the case under review the contract of sale would be a defense to the plaintiff's suit in trespass to try title; for a judgment for the plaintiff Murphy, who has sued for title and possession, would destroy the contract. This is a necessary consequence of a vendor's right to assert his rescission of his contract under formal pleadings in trespass to try title. See: Article 7391, V.A.T.S.; Ezell v. Fowler, Tex.Civ.App., 20 S.W.2d 1097; Brous-

sard v. L. Cartwright Realty Co., Tex.Civ. App., 179 S.W.2d 777; Hall v. Dallas Joint-Stock Land Bank, Tex.Civ.App., 95 S.W.2d 200 where, at page 201 it is said: "It is well settled in this state that a vendor in an executory contract for the sale of land, where default is made in the payment of purchase money, may disaffirm and recover the land if he has done nothing to waive that right. In such an action, the original vendee or purchaser under him may, if the facts warrant, oppose disaffirmance and defeat a recovery of the land." Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873; Waller v. Nethery, Tex.Civ.App., 188 S.W.2d 736.

The defense made in the case under review is not subject to limitations for the same reason that the defenses made in the other cases cited above were not; it is only in "negation of the plaintiff's asserted right to recover." Award in behalf of the defendants of the legal consequences of this defense, made by way of denying the plaintiff Murphy's claim, is not affirmative relief, any more than were the judgments in Runnels County v. Gulf Oil Corporation and the other decisions cited, and thus the denial of plaintiff Murphy's claim could not be a specific performance of his contract with the defendants. It seems to us that on the defendants' theory of the facts, which the trial court has impliedly adopted, the suit actually has the effect of one brought to annul the contract and that under the circumstances it cannot be maintained unless the contract has ceased to have any legal consequence simply because the remedy of specific performance has been barred by Article 5531. What we are holding is the contrary, namely, that despite the operation of Article 5531, the contract of sale does yet exist and have legal consequences.

█ The plaintiff, in his discussion of the defendants' arguments and in his Points of Error, has given the same effect to the defendants' answer as he gives to the defendants' cross action for specific performance, and the prayer of the answer does contain a request that the defendants' title be quieted. However, this element of the prayer is surplusage. See: Gilmore v.

O'Neil, 107 Tex. 18, 173 S.W. 203 at page 207: "His prayer for the removal of the cloud upon his title, cast by the claims of the plaintiffs and interveners, did not alter the character of his defense, or convert it into an affirmative action subject to limitation." We have quoted another part of the prayer which requests that the plaintiff take nothing; the answer can be construed to be a defensive plea; and the fact that the defendants plead both an answer and a cross action shows that they intended to plead defensively as well as for affirmative relief. Their answer has been summarized, but to repeat, the defendants have fully alleged their possession, and payment of rent, their acts in acceptance of the plaintiff's offer to sell, the representations and promises of the plaintiff to them, and their reliance thereon, including their improvements upon the land.

Evidence was given in support of these allegations and the issues of fact raised thereby were found in the defendants' favor.

█ The defense, then, was a complete rebuttal of the plaintiff's claim that he had title and was entitled to possession; and the defendants having offered to pay the plaintiff whatever was owed him, this rebuttal entitled the defendants to a conditional judgment that the plaintiff take nothing except the money owed him by defendants as in Runnels County v. Gulf Oil Corporation. The trial court's judgment goes beyond this, and on condition that defendants pay a certain sum of money into court, awards title to defendants and also commands the plaintiff to give the defendants a deed. It seems to us that the formal award of title and the command to make a deed are surplusage (concerning the command to make a deed see: Articles 2214 and 7391) and that a conditional judgment that plaintiff take nothing except the money owed him would have accomplished exactly the same result. The action was in trespass to try title. The plaintiff put in issue the title to the land; he did not sue for the possession alone. Where the defendant is in possession of the land thus

sued for in trespass to try title, an award of affirmative relief to him when he is only entitled to a judgment that the plaintiff take nothing is harmless error. See: French v. Olive, 67 Tex. 400, 401, 3 S.W. 568; and also see: Houston Oil Co. v. Village Mills Co., Tex.Com.App., 241 S.W. 122, at page 127 (Hn. 5).

It is a consequence of these conclusions that if the trial court erred in decreeing a specific performance of the contract between the plaintiff and the defendants because this relief was barred by limitation under Article 5531, the error is not ground for reversal.

Points 3 and 4 are overruled.

 Point 5 assigns as error that the defendants never accepted the plaintiff's offer, made in the lease, because they did not offer to give the plaintiff the vendor's lien notes provided for in the lease. It is to be noted that the offer to sell is for $20 an acre, and that the offer itself does not provide how the price shall be paid. The vendor's lien notes are referred to in a later provision which is a promise by plaintiff to defendants to make a deed and take Sills' notes. We have some inclination to believe that the provision for notes was intended for the defendants' benefit and not for the plaintiff's, but regardless of whether it was or not, the defendants' testimony would support a finding that the defendants' offers of money were always acceptable to the plaintiff and that he never made the objection to them that they had not offered to give him notes or the interest he would have earned on these notes. We note that in his letter of August 14, 1951 to his agent of deposit, the plaintiff said nothing about promissory notes. The evidence also shows that the defendants made offers to the plaintiff after the period of time which would have been covered by the vendor's lien notes, whether this period was begun with the expiration of the term of the lease or with the date of the plaintiff's survey in 1946 or with the date of the defendants' survey in 1947. It does not appear that the defendants ever made an offer to the plaintiff which ex-cluded the interest the plaintiff would have earned if the vendor's lien notes had been made to him, and there is actually some evidence by the defendants that they were willing to pay this interest. All the parties did was to accelerate and thus change the time of payment. Concerning change in the time, medium and method of payment, see: Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488. See, also Bullis v. Noyes, 75 Tex 540, 552, 12 S.W. 397 at page 402; Watkins v. Arnold, Tex.Civ.App., 60 S.W.2d 476; Ley v. Patton, Tex.Civ.App., 81 S.W.2d 1087 at page 1090. We think the trial court was justified in inferring from the parties' conduct as the defendants described it, that defendant Sills only asked the plaintiff for the property which the latter promised to sell to him and that his offers did not attempt to deprive the plaintiff of the mineral reservation provided in the contract. By reason of all the circumstances, Point 5 is overruled.

We note that the subject matter of Point 5 is the only objection which the plaintiff has made to the sufficiency of the defendant's acceptance of the plaintiffs offer to sell them the land.

These comments adjudicate all Points of Error. The Points of Error are all overruled and the judgment of the trial court is affirmed.

### On Motion for Rehearing

 (1) We have reconsidered the holdings made on the original hearing and we adhere to all of them except that concerning the description used in the trial court's judgment, which is reformed as stated below. Our holding that the description in the plaintiff's promise to sell to the defendant Sills, contained in the lease, is prima facie sufficient is based on a construction of the lease, not on evidence extraneous to the lease. Plaintiff's contention required us to go no further, for it is his contention that the words of the description are insufficient to convey any land whatever; he invokes a rule stated in Kingston v. Pickins, 46 Tex. 101, as fol-

lows: "The construction of a deed, being a matter of law, is for the court. If, therefore, the land intended to be conveyed by it, be so inaccurately described that it appears, on an inspection of the deed, the identity of the land is altogether uncertain and cannot be determined, the court should pronounce it void." We have simply carried the matter further and considered how the description applied in practice. We have reviewed the decisions cited by plaintiff but believe none of them to be in point on the facts; there is much more involved in the construction of plaintiff's promise to sell to the defendants Sills, contained in the lease, than was involved in those cases. The present case is not one where the property to be conveyed is only described as an undefined part or as so many acres out of another tract. We have construed the plaintiff's promise to sell as one which did not give the promisee power to select the land promised to him. If we erred in so holding, then the plaintiff's promise to sell ought to be construed as one giving the promisee an option to buy not more than ("up to") 20 acres and to locate it in the "south part" of the land leased; and this selection has been made by the promisee, the defendant Sills, and no objection has been made by the plaintiff to the selection as such. See: Taylor v. Lester, Tex.Civ. App., 12 S.W.2d 1097; Arthur v. Ridge, 40 Tex.Civ.App. 137, 89 S.W. 15, page 17. We note that Mrs. Sills testified that the 20 acres had been enclosed by a fence and the defendants' brief claims the south 20 acres of the land leased. The description used in the judgment concerning the 20 acres which one part of the judgment denies to the plaintiff and a subsequent part adjudges to the defendants differs from that in the plaintiff's promise to sell to defendant Sills which is in the lease. Thus, the judgment uses the words "out of" instead of "in" and, not having the lease copied in it whereby the plaintiff's promise to sell was construed by us, states a description which, in terms, and without recourse to the lease, comes within the holding in Matney v. Odom, 147 Tex. 26, 210 S.W.2d 980, 981. However, this defect can be corrected in this court. Defendants have proved a right

to be protected in their possession of the south 20 acres of the tract leased by plaintiff, and the judgment will therefore be reformed so as to effectuate this right and to comply literally with our construction of the description used in the plaintiff's promise to sell to defendant Sills which is in the lease. The pertinent part of the judgment begins with "save and except" and this part will be reformed so as to read: "save and except, however, the surface and one-fourth ($\frac{1}{4}$) of all the oil, gas and other minerals in, under or upon all that certain tract of land containing exactly 20 acres, being a portion of the above described tract of land and being the south 20 acres of that portion of said tract lying south of a line described as follows." It is unnecessary to correct the subsequent part of the judgment decreeing title to the defendants since protection of the defendants' right to remain in possession does not require this. So, except as changed, the judgment of the trial court will remain in force.

(2) Concerning the points assigning as error that defendants' claim was barred by Article 5531, R.S.1925, we add these comments:

▮ Our holding that the contract continues to exist and to have legal consequences implies that Article 5531 operates only on a remedy to be asserted in court and, if applicable to the defendants' cross action under the circumstances, did not extinguish the contract of purchase and sale completed by the defendants' acceptance of plaintiff's offer. This is the literal meaning of Article 5531, and we so construe that statute. A distinction has been made between statutes of limitation which affect the remedy and those which affect the right, and our construction of Article 5531 is supported by the court's reasoning in Goldfrank, Frank & Co. v. Young, 64 Tex. 432 and in Fievel v. Zuber, 67 Tex. 275, 3 S.W. 273.

▮ The defendants rightfully took and have rightfully remained in possession of the land; and if the contract of purchase and sale was not extinguished by Ar-

ticle 5531, the plaintiff ought not to dispossess the defendants, for the contract entitles the defendants to continue in possession. Concerning the right of a vendee to retain possession, who is in possession by the vendor's act and who is not in default, the court said in Browning v. Estes, 3 Tex. 462 at page 474: "It is true that the possession of the vendee, who entered with the assent of the vendor, is lawful, nor can it be disturbed so long as he performs with fidelity the obligation imposed by the stipulations of the contract and those which flow from the relation subsisting between the vendor and vendee."

The case of a mortgagee rightfully in possession has some analogy if Article 5531 does apply to the defendants' cross action. Thus the fact that the mortgagee's debt is barred by limitation does not affect his right to remain in possession; he has a right to possession until he has been paid. See: Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329. And the analogy also bears if our judgment seems to accomplish indirectly what Article 5531 would forbid to be done directly; and this result, of course, is proper if the particular statute of limitation affects only a remedy, and if a particular matter is a defense within the rule of decision making statutes of limitations inapplicable to defenses. Our holding leaves room within which Article 5531 can operate; the rule of decision applied by us can only operate when the vendee is rightfully in possession of the land; it could not apply when the vendee did not have possession, or rightful possession. The fact that the plaintiff is entitled in equity to the unpaid part of the price does not convert the defendants' right to remain in possession from a defense into a specific performance within the meaning of Article 5531; this was involved in Runnels County v. Gulf Oil Corp., Tex.Civ. App., 209 S.W.2d 969, cited in our original opinion. Duff v. Davis, Tex.Civ.App., 70 S.W.2d 836, by this Court, is distinguishable from the present case. There, the lessee's option had expired before it was exercised, and this Court's application of Article 5531 to the lessee's cross action is not to be construed as an implied holding that Article 5531 had extinguished the lessee's right or was applicable to the defense which we have sustained in the present case. Such matters were not discussed. We remain of the opinion that the defendants' rights were asserted defensively, in the answer, as well as affirmatively, in the cross action.

Our comments, both in the original opinion and in this opinion, have been limited to the specific attacks made on the contract and on the judgment by the plaintiff; we have given no consideration to anything else and our opinions should be construed as limited to the particular matters discussed. To the extent of the changes made in the trial court's judgment, the motion for rehearing is sustained and judgment is here rendered reforming the trial court's judgment as noted above. Otherwise, the motion for rehearing is overruled.